STATE OF FLORIDA, ex rel., etc., *Plaintiffs,* vs. GEORGE WILLMER, et al., *Defendants.*

135 So. 859.

Division B.

Opinion filed June 17, 1931.

*Fred H. Davis,* Attorney General, *Whitaker, Himes & Whitaker,* and *Jackson, Dupree & Cone,* for Plaintiffs; *J. Tom Watson* and *S. S. Sandford,* for Defendants.

WHITFIELD, P.J.—Creditors of an insolvent State bank, whose assets and business are being administered under the authority of the State Comptroller pursuant to the Statute, brought this suit in the Circuit Court against the bank, the Comptroller, his liquidator and the State Treasurer. The bill of complaint, upon elaborate allegations of mismanagement and wrong-doing in administering the affairs of the insolvent bank under the authority of the Comptroller, prays:

"1. That the defendants and each of them may be required to answer this Bill of Complaint, but not under oath, the answer under oath being hereby expressly waived.

2. That the defendant, JOHN A. NEWSOM aforesaid, may be enjoined both pendente lite and permanently from further engaging in the service of liquidator of the defendant, Citizens Bank & Trust Company, or acting as such; and in the administration of full and complete equitable relief in the conjunction with such prayer for injunction, that said defendant may be removed and discharged from such liquidatorship, by this Court.

3. That the further liquidation of the affairs, assets, property rights, business and business interests of said defendant Citizens Bank & Trust Company by any other than a receiver of this Court may be forthwith restrained and enjoined both pendente lite and permanently, by appropriate and proper injunction orders and writs against either or both of the parties defendant hereto, and against all, of such parties; that the defendant Ernest Amos as comptroller may be enjoined both pendente lite and permanently from further engaging in or exercising supervision and control over the liquidation of the said defendant bank.

4. That this Honorable Court will appoint a fit and proper person to serve as a receiver to take charge of the business, assets, property rights, and interests of

the said defendant Citizens Bank & Trust Company, to administer and liquidate the same for the benefit of its creditors and stockholders as a trust estate under the supervision and control of this Honorable Court, and within the purview of the statutes and general law in such cases made and provided, with a proper bond to be fixed, both in amount and condition, by order of the Court, to be given by such receiver, and upon such proper and appropriate and reasonable compensation as may be by this Court determined and adjudicated for the services of such receiver after the rendition thereof, such receiver to be vested with the power, right and authority to take charge of, custody and control over all of the visible, tangible and intangible existing assets, and its property rights and interest of every kind and character whatsoever, to collect all outstanding debts due the said corporation and to sue for, in the name of such receiver on behalf of such corporation, all of its dissipated, and/or otherwise lost, destroyed, converted, improperly transferred, and diverted assets, to hold such assets and each and all of them as the same may be recovered for the benefit of said corporation, pending the orders of this Court from time to time governing and with respect to their liquidation and distribution among creditors; and with such other adequate, commensurate and appropriate power and authority in the premises as may be required, and to the Court may seem meet.

5. That the defendant corporation, its officers, and agents, may be required to turn over and deliver to a receiver of this Court the books, records, accounts, properties, and assets of every kind and character whatsoever, of the said defendant bank; that the receiver herein applied for may be named and appointed by the Court pendente lite after notice, as well as permanently, and that the injunction and restraining order herein asked for may be issued and granted by the Court pendente lite as well as permanently.

6. That these complainants may have such other and general relief in the premises as to the Court may seem meet and as equity would require.''

The Chancellor overruled a general demurrer to the

bill of complaint and "decreed that the motion for a temporary injunction and for the appointment of a receiver pendente lite be and the same is hereby denied without prejudice and the right reserved to the complainants herein to renew said motion whenever they deem the facts and circumstances "to warrant".

The defendants were ordered to answer the bill of complaint. A rule in prohibition was issued by this court.

By answer to the rule the respondent Circuit Judge avers that "the allegations of insufficient and inadequate statutory administration of the assets of said bank as well as the allegations of the invasion of vested property rights by the Comptroller and his agents are sufficient to invoke the aid of a court of equity to review and restrain the alleged unlawful acts complained of".

In State ex rel. vs. Barnes, Circuit Judge, et al., 99 Fla. 1258, 128 Sou. 860 it is said:

"The Comptroller may perform official acts throughout the State and may be amenable to the jurisdiction of the courts where official acts, the subject of litigation in such courts, have been performed.

In the exercise of the sovereign power of the State, statutes provide administrative regulations for the supervision of banks and of building and loan associations by the State through the State Comptroller, and also provide that under stated conditions relating to insolvency or illegality of management, the Comptroller may take possession of the property and business of such banks and associations; and if necessary or advisable to do so, the Comptroller is by statute authorized to appoint as his agents, liquidators through whom the Comptroller shall administer on such assets and business, the legislative purpose being to facilitate the liquidation and settlement of the affairs of such insolvent banks and associations in the most economical and expeditious manner.

Should the Comptroller or his agents violate the law in the statutory administration of the property and business of insolvent banks and building and loan as-

sociations, the courts may adjudicate controversies or afford appropriate relief as to particular matters that may be involved in such statutory administration.

The law does not contemplate that the entire statutory administration of the affairs of an insolvent bank or building and loan association shall be superseded by equity proceedings through a chancery receiver, at least unless it is clearly shown by due allegations and proofs that the statutory administration is inadequate to 'conserve property rights that are secured by the Federal and State Constitutions. See Port Newark Nat. Bank vs. Waldman, 46 F. (2nd) 296, C. C. A. . . . .; Bank of Bay Biscayne vs. Hawkins, 42 Fla. (2nd) 209, C. C. A. . . . ..

The prayer is not for specific relief respecting the conduct of the Comptroller and his liquidation in administering the assets and business of the insolvent bank, or that the court "review and restrain the alleged unlawful acts complained of" as stated in the order, but the prayer is: (1) that the liquidator "be enjoined both *pendente lite* and permanently from further engaging in the service of liquidator of the defendant bank," and that such liquidator "be removed and discharged from such liquidatorship by this Court;" (2) that "the further liquidation of the affairs, assets, property rights, business interests of said" bank "by any other than a receiver of this court may be forthwith restrained and injoined both *pendente lite* and permanently" * * * that the * * * Comptroller "be enjoined both *pendente lite* and permanently from further engaging in or exercising supervision and control over the liquidation of the said defendant bank;" (3) that the court appoint a receiver to take charge of the "business, assets, property rights and interests of the said" bank "to administer and liquidate the same;" that the defendant bank "be required to turn over and deliver to a receiver of this Court the books, records, accounts, properties, and assets of every

kind and character whatsoever of the said defendant bank'' &c and for general relief.

The allegations of the bill of complaint do not show that the statutory authority of the Comptroller to administer on the assets and business of the bank is not appropriate and adequate to conserve the property rights of the complainants or that such statutory authority is so abused by the Comptroller as to render the statutory system of administering upon the assets and business of the insolvent banks inadequate to protect the property rights of the complainants, and as there is no prayer for relief by requiring the Comptroller and the liquidator to pursue the law in the particulars wherein it is alleged that the law has been violated, the bill of complaint does not state an equity, for the relief prayed.

In a case of this nature an appeal from a decree rendered in accordance with the prayer of the bill of complaint would not afford complete and adequate relief, therefore, prohibition may be invoked.

Writ awarded.

TERRELL, AND BROWN, J.J., AND GRAY, Circuit Judge, concur.

BUFORD, C.J., AND ELLIS, J., dissent.

DAVIS, J., disqualified.

BROWN, J., concurring:—The bill does not show that complainants applied to the liquidator to take any action to right the wrongs complained of and that he had refused to do so. See Blythe v. Enslow, 219 Ala. 638, 123 So. 71; Banks vs. Smith (Ala.) 129 So. 93; Ex parte Chetwood, 165 U. S. 443; 41 L. ed. 782. If such application had been made and refused the complainants could then have filed suits to set aside the alleged fraudulent transfer of assets of the bank. Other remedies were also open to them, no doubt, as indicated by the cases cited. But the purpose of this bill is to oust the statutory administration of the bank's affairs by a liquidator appointed ac-

cording to law and put a court receiver in charge. I do not think a sufficient showing has been made by the bill to authorize such action by the court, or to give the court jurisdiction for that purpose.

It appears also that the wrongful acts complained of were not done by the present liquidator, but by a predecessor.

See also McDavid vs. Bank of Bay Minette, 193 Ala. 341, 69 So. 452.

WHITFIELD, J., concurs.

ELLIS. J., dissenting:—A petition for a writ of prohibition was filed in this Court and a rule nisi was issued against George Willmer, Hector Caron and Minnie Keel, Administratrix, for themselves and on behalf of all creditors of the Citizens Bank & Trust Company and George W. Tedder, as Judge pro hac vice of the Thirteenth Judicial Circuit of Florida to show cause why the Honorable George W. Tedder acting as judge as aforesaid should not be prohibited from exercising and entertaining any jurisdiction whatever in a certain cause in chancery instituted by Willmer, Caron and Minnie Keel, Administratrix, on behalf of themselves and other creditors of the Citizens Bank and Trust Company in the Circuit Court for Hillsborough County against W. V. Knott, Treasurer; Ernest Amos, Comptroller, John Newsom, Liquidator of Citizens Bank and Trust Company and the Bank.

The purpose of such suit being to secure the appointment of a Court Receiver to take charge of the business, assets and property rights and interests of the Bank and to administer and liquidate the same for the benefit of its creditors and stockholders as a trust estate under the supervision of the Court; to require the Comptroller to deliver to the Receiver the books, records, accounts, properties and assets of the Bank; John Newsom, Liquidator of the Bank appointed by the Comptroller under

the provisions of Chapter 13576, Acts 1929, be enjoined
'from engaging in the service of Liquidator of the Bank
and that he be removed from the liquidatorship of the
Bank and for general relief. The bill was filed August
30, 1930.

The complainants were creditors of the Bank, their
claims aggregating approximately seventeen thousand
dollars, proof of which had been submitted to and ap-
proved by Newsom. The Bank is a Florida corporation,
had admitted its insolvency and sought the appointment
of a Liquidator under the Florida laws and Newsom had
been appointed by the Comptroller as Liquidator.

The Bank closed its doors to its depositors and patrons
on July 17, 1929, and discontinued its banking and trust
company business and the Comptroller took possession
and on August 3, 1929, appointed C. L. Knight as Liqui-
dator and a Judge of the Circuit Court adjudged the
Bank to be insolvent in appropriate proceedings. Knight
continued as Liquidator until April 1, 1930, when he re-
signed and Newsom was appointed in his place.

The Bank had for many years conducted a banking
and trust business under the banking and trust company
laws of the State. Under the powers enumerated in its
charter it had received and held moneys and properties
in trust for trustees, executors and guardians. The Leg-
islature in May, 1895, had granted a charter to the bank
which was in force when the Bank ceased to do business.
It was alleged that such charter constituted a part of the
contract under which the complainants became depositors
and patrons of the Bank and thus became creditors of
the Bank and entitled to invoke the jurisdiction of equity
for the preservation of the Bank's assets against waste
in the event of the Bank's insolvency.

It was alleged that subsequently to granting the special
charter to the Bank the Constitution was amended pro-
hibiting the granting of such charter but the Bank had

never availed itself of the privilege of converting its special legislative charter into a general state bank charter, which it might have done but was not required so to do. See Sec. 6114 C. G. L. 1927, (4173 R. G. S. 1920) (2195 R. S. 1892); Art. III Sec. 25 Const.

The bill also alleged that the Bank, under the exercise of its trust powers, had acquired large assets which were in possession of the Bank when it ceased to do business; that it acquired large stock interests in subsidiary corporations which the Bank brought into existence for its own profit and which were controlled by the Bank's officers; that all of such corporations became insolvent when the Bank failed; that those corporations which were named in the bill had no independent existence or power of action, were mere branch agencies of the Bank; that the stock therein was held by the officers of the Bank and paid for by it. It is alleged that each of such subsidiary companies has in its own name assets of great value but are being withheld from and are being lost to the depositors of the Bank by the separation of such assets from those of the Bank by delivering them to a receiver appointed by a Federal Court of such companies for administration, liquidation and disposition in fraud of the depositors and creditors of the Bank. Those assets are alleged to be of the approximate value of $1,456,000. That such assets in reality of the Bank have been classified as ''pledged assets'' and have been diverted by the Liquidator of the Bank and delivered over to the Receiver of the subsidiary corporation. It is alleged that unpledged assets of the Bank of the aggregate book value of $425,718.72 have been delivered by the Liquidator to the Receiver of the subsidiary corporations; that mortgages securing notes aggregating $220,000. have been transferred by the Liquidator to W. Paul Vance, Trustee, and other notes and mortgages aggregating $756,000. in value have been transferred by the Liqui-

dator to the Central Farmers Trust Company of West Palm Beach. It is alleged that all the above assets are the property of the Bank and should be administered for the benefit of its creditors; that a large part of the assets of the Bank which were delivered to the Receiver, making up the aggregate sum of $1,436,000., were prior to the transfer to him pledged by the Bank as collateral with the National City Bank of New York to secure a debt due by the Citizens Bank and such assets were redeemed from hypothecation by the first liquidator of the Bank.

Similar charges as to the division by the Liquidator of the Bank's assets involving approximately a million dollars in value are charged under circumstances showing wastefulness and incapacity, if not bad faith.

It is unnecessary for the purposes of this opinion to set out such charges more particularly nor any more of them than have already been given. It is sufficient to say that if the allegations of the bill are true they disclose a wastefulness and incompetency of administration of the Bank's affairs to the injury of the complainants and all other creditors of the Bank; that to say the least demands at the hands of the judicial authority of this State when applied for in appropriate proceedings of a most thorough investigation and correction. Gross neglect of the interests of the Bank's creditors on the part of the Comptroller and the Liquidator appointed by him are charged. It is charged that they are permitting the conversion and diversion of the assets of the Bank to "special interests and specially considered persons, firms or corporations in violation of the rights of the depositors and other general creditors of the Bank and in disregard of the law". That the appointment of a Receiver to recover so far as possible the assets of the Bank which the Comptroller and the Liquidator have permitted to pass into adverse hands without a protest is the only remedy of complainants for redress against the mismanagement

of the Bank's affairs by the Comptroller and the Liquidator, who are expressly charged with wastefulness and incompetency through ''permission, acquiescence, consent and for fraudulent collusion on the part of the said Amos''.

It is also charged that the Comptroller has pursued a policy of concealment from the general depositors of his activities against their interests. It is charged that the Comptroller's actions and failure to interest himself in his duties in this regard are the result of bad faith and for the sole purpose of utilizing the Bank's assets to pay ''salaries, attorneys' fees and claims of creditors, or alleged creditors'' who are being arbitrarily through collaboration and collusion preferred, contrary to law and without legal or equitable justification over the claims of the depositor creditors of said bank''.

Mismanagement, carelessness, extravagance and fraud are charged against the defendants which it is alleged is resulting and has resulted to the great injury and damage of the complainants. The bill is replete with allegations of fraud, mismanagement, collusion, neglect, waste and wilful disregard of complainants' interests on the defendant's part.

On the filing of the bill Judges Robles and Parks of the Thirteenth Judicial Circuit certified their disqualification and application was made to the Judge of the Twenty-second Circuit for the appointment of the Receiver as prayed for in the bill. Notice was given to defendants that on August 13, 1930, application would be made to the Honorable George W. Tedder of the Twenty-second Circuit for the appointment of a Receiver. The Attorney General in behalf of the Comptroller and State Treasurer appeared specially for the purpose of objecting to the jurisdiction of the court and moved to dismiss the suit because, as he averred, the ''law does not contemplate that the entire statutory administration of

the affairs of the insolvent Citizens Bank & Trust Company shall be superseded by equity proceedings through a Chancery receiver, it not being in any wise made to appear by the bill of complaint that the statutory administration is inadequate to conserve any property right had or claimed by the complainants, or either of them, which rights are secured by the Federal or State constitution, it affirmatively appearing from the bill of complaint that the complainants, and each of them, are mere claimants to a pro-rata share of the assets available for distribution through the statutory administration of the insolvent bank now in liquidation as shown by the bill of complaint and that no property rights within the protective provisions of the Federal or State Constitution have been invaded;

"(2)    And defendants Ernest Amos, Comptroller, and W. V. Knott as State Treasurer, jointly and severally further move this Court to dismiss this cause and proproceed no further therein because it appears from the bill of complaint that the principal object of the suit is to control and review in a Court of Equity the exercise of statutory and administrative powers by the Comptroller and liquidator, which are not reviewable in a Court of Equity nor redressable therein at the suit of the depositor or claimant against the insolvent bank even where the allegations tend to show act of maladministration or abuses of delegated powers."

The Liquidator, John A. Newsom, by his solicitors protested against his removal and the appointment of a Receiver upon many grounds, the substance of which was that the allegations of the bill were not sufficient to show maladministration on the part of the Comptroller and there were no sufficient averments of facts to disclose fraud, corruption, maladministration or other illegality in the management of the Bank's affairs and that the court was without jurisdiction.

The court postponed the hearing of the cause until September 25, 1930. In the meantime the Governor by Executive Order directed Judge Tedder to try and determine the cause because of the disqualification of the two Circuit Judges for the Thirteenth Circuit. There were exceptions to the bill, motions for better and further statement and demurrers interposed, presenting many technical points in pleading and objections for lack of necessary parties.

In December, 1930, Judge Tedder of the Twenty-second Circuit, sitting in place of the judges of the Thirteenth Circuit disqualified, in a very able opinion held that the bill presented a cause in complainants' behalf within the jurisdiction of a court of equity and entered an order in which the motion to dismiss the bill was denied, objections to the bill and the general demurrer to it overruled. The order also denied the motion for a temporary injunction and for the appointment of a Receiver but without prejudice and with the right reserved in the complainants to renew the motion whenever they deem that the circumstances warrant. The order also required the defendants to answer the bill of complaint upon a date named in the order.

On December 5, 1930, three days before the date fixed by the order on which the defendants were required to answer the bill they applied to this court for a writ of prohibition and a rule nisi was issued on December 13, 1930, as prayed for in the petition. The rule required the respondents to answer on December 16, 1930. All the complainants answered before that date. The complainants' answer to the rule consisted of a motion to quash it and demurrer and an answer. Judge Tedder's answer admitted the allegations of the rule and averred that considering the allegations of the bill of complaint and the pertinent applicable provisions of the Constitution of the State of Florida the Circuit Court of Hills-

borough County has jurisdiction of the subject matter and of the parties to said suit; that the allegations of insufficient and inadequate statutory administration of the assets of the Bank as well as the allegations of the invasion of vested property rights by the Comptroller and his agents are sufficient to invoke the aid of a court of equity to review and restrain the alleged unlawful acts.

The motion to dismiss, demurrer and answer of the complainants in the chancery suit present the same question, also that as the proceedings in prohibition were not brought on the relation of the Attorney General the rule is applicable that the allegations of the petition and rule should show a prima facie case for prohibition. Also that as the defendants by general demurrer tested before the trial court the sufficiency of the allegations of the bill and that demurrer was overruled the petition merely shows an attempt by way of the writ of prohibition to obtain a review of the chancellor's decree or order. There were demurrers to the answers to the rule and application to amend the petition by adding the word "As" after the names of W. V. Knott and Ernest Amos to show that they were applying for the writ in their official capacity and not in their individual characters.

It is contended by relators that the case presents a conflict of "right" to exercise power over a particular subject as between the State's executive officers and the Circuit Court of Hillsborough County. The use of the term "right" as applied to the activities of State officials may be somewhat misleading, if not wholly wrong in that the suggestion it carries is somewhat contrary to the idea of service. We would prefer the term "duty" if it is to be admitted that the cause presents a controversy between two arms of forces of the sovereign power as to whose "duty" it is to administer the justice and enforce the "rights" which the facts reveal and require. "Duty" is a thing which one ought or is bound or under obliga-

tion to do. Right is a power, authority or franchise which one may or may not exercise as he desires. One is service, the other privilege.

It is difficult to conceive of a state or sovereign power having a conflict with itself as to whether the executive or the judicial arm shall exercise a given function or that there should be a conflict between two branches of the sovereign power as to which shall perform a certain duty. A question may arise whether a given state of facts, a certain combination of circumstances presents a justiciable question or calls merely for executive service. It is sometimes difficult to find the line of demarcation between a judicial and legislative duty where the facts blend the two fields seemingly into an indivisible unity, but it would seem to be less difficult to distinguish between a judicial and executive duty.

The three powers of government are declared to be separate in that it is provided that no person properly belonging to one of the departments of government shall exercise any powers ''appertaining'' to either of the others. Art. II Constitution.

This Court has construed the word ''appertaining'' as conveying the same idea as the phrase ''properly belonging''. See Trustees Int. Imp. Fund v. Bailey, 10 Fla. 238.

It has also held that not every authority, discretion or judgment that may be incident or necessary to the performance of administrative duties is necessarily among the powers of government that the Constitution separates into departments so that such authority or judgment may not be subject to judicial review. See State v. A. C. L. R. Co., 56 Fla. 617, 47 South. Rep. 969; State v. Louisville & N. R. Co., 62 Fla. 315, 57 South Rep. 175; Bailey v. Van Pelt, 78 Fla. 337, 82 South. Rep. 789.

The purpose of the Constitution therefore in dividing the powers of government into three separate and independent departments is to secure efficient government

by the harmonious co-operation of the departments. State v. A. C. L. R. Co., supra.

The idea of a conflict in the exercise of governmental power between two departments is more or less foreign to the purpose of the Constitution. The question is rather where does the duty lie? If the officers of one department conceive it to be their duty in the circumstances to render the particular service, to exercise the particular authority, is the service or the authority sought to be performed or exercised, such a service or authority as may be classed as a power of government which appertains to the department exclusively which seeks to perform it, or is it merely an authority or service incident or necessary to the performance of the department's duty and is therefore subject to review?

The jurisdiction of a court of chancery in the matter of the appointment of receivers will, as the learned chancellor below said, "hardly be questioned". It is part of the jurisdiction of equity and is based on the inadequacy of the remedy at law being intended to prevent injury to the thing in controversy and to preserve it pendente lite for the security of all parties in interest to be finally disposed of as the court may direct. The power to appoint a receiver is limited, almost exclusively, to the cases where it is necessary either to prevent fraud, or to rescue the property from threatened destruction, but when there is no fraud or imminent danger of the property sought to be reached being lost, injured, diminished in value, destroyed, squandered, wasted or injured the power is not properly exercised. As a general rule a receivership is purely an ancillary remedy. The petitioner should show either a clear legal right to the property, or that it constitutes a special fund out of which he is entitled to satisfaction of his demand. 23 R. C. L. 9, 11, 15; Apalachicola N. R. Co. v. Somers, 79 Fla. 816, 85 South. Rep. 361; Hillsborough Grocery Co. v.

Ingalls, 60 Fla. 105, 53 South. Rep. 930; McGowan v. Ingalls, 60 Fla. 116, 53 South Rep. 932.

In the latter the court speaking through Mr. Chief Justice Whitfield said: Here the court having full equity powers and jurisdiction of the property, the subject matter of the suit, had the judicial power to appoint a receiver on the bill of complaint. When the receiver is improperly appointed the decree may be erroneous, but not void for want of judicial power. There can be no question therefore that the appointment of a Receiver is a judicial power, one which appertains exclusively to the judicial department. The wrongful diversion of a trust fund is a basis of equity jurisdiction. Guaranty Trust & Savings Bank v. U. S. Trust Co., 89 Fla. 324, 103 South. Rep. 620; Montgomery Bank & Trust Co. v. Walker, 181 Ala. 368, 61 South. Rep. 951; Ex parte Amos, 93 Fla. 5, 112 South. Rep. 289.

In the latter case the court held that there is nothing in the banking law of the State to prevent the courts in a proper case from taking control of the assets of a banking corporation and administering them through its receiver. It provides even for testing the comptroller's action in appointing a receiver. And in State ex rel. Atty. Gen. v. Knight, 98 Fla. 891, 124 South. Rep. 461, this Court held that Chapter 13576 Acts 1929 under which the Liquidator was appointed in this case conferred no more power upon the Comptroller's agent designated in the act by the term "Liquidator" than was conferred by the acts amended upon the agent therein designated as "Receiver".

In the case of Bryan v. Bullock, 84 Fla. 179, 93 South. Rep. 182, that banking law was held not to be violative of Article II of the Constitution distributing the powers of the state government. In that case the distinction between a "Receiver" appointed by the comptroller and a court receiver appointed in the exercise of a judicial

function is pointed out. As is also the reason for a law vesting an officer of the Administrative Department with power over the organization, management, business methods, conduct and activities of banking corporations. The purpose, said this Court, is to secure conformity to rules and regulations prescribed by law for observance by banking corporations which are deemed to secure conservative, skillful, honest, efficient and trustworthy service and which constitute the conditions upon which such companies are permitted by the State to transact banking business. The end to be obtained by such a law is to *prevent* bank failures which, said the Court, are so often followed by impairment of the credit and consequent efficiency in a commercial and industrial way of great numbers of people who may be patrons and correspondents of the Company.

Bank failures tend, said the Court, to ''impair the facilities of commercial intercourse, for the time renders the earning of a livelihood more difficult, promotes distrust and tends to destroy confidence which is so essential in all relations and so necessary to the peace of society.''

It is in view of these considerations, said the Court, that the Legislature has prescribed the rules and regulations with which State banks shall comply as conditions upon which the transactions of such a business shall be carried on and upon which management and control shall depend. It is upon this policy and this alone that an officer of the administrative department is vested with the *power* and *charged* with the duty to become and *keep* informed concerning the activities, methods and conditions of state banking companies and is vested with the discretion to interfere and take actual control of a banking company's affairs when he deems the bank's management to be inefficient and violative of the rules prescribed for securing efficient service. On such condi-

tions charters are granted and accepted by banking corporations and those salutary provisions of the law become a part of the contract between the State and such companies. In the case of State ex rel. Dade County v. Barnes, .... Fla. ...., 128 South. Rep. 860, the doctrine was recognized that the act vesting the Comptroller with the power to appoint a Liquidator does not divest the court in a proper case of its jurisdiction in the matter of appointing a receiver.

"Where the bank is clearly insolvent and its affairs are badly managed by the liquidating officers, some of its creditors or stockholders being secured to the injury of others, and its assets being distributed to stockholders before payment of its debts a receiver may be appointed by the court at the instance of an injured creditor or stockholder". See Cogswell v. Sec. Nat. Bank, 76 Conn. 252, 56 Atl. Rep. 574; Elwood v. First Nat. Bank of Greenleaf, 41 Kan. 475, 21 Pac. Rep. 673; King v. Pomeroy, 121 Fed. 287.

Applying these principles to the question before us the conclusion is inevitable that the power of the Comptroller to appoint a Liquidator of an insolvent Bank is merely an authority or service incident to the performance by the department of which he is an officer of the duty imposed by the banking law and is therefore subject to review by the judicial department.

The contention that the Legislature has by the act in question transferred to the Executive Department of the State the power to the exclusion of the Judicial Department to administer the assets of an insolvent bank and thus incidentally adjudicate the rights as those for whose benefit such funds of the defunct bank are held has no justification in the reason for the enactment of the law, the Constitution of the State, nor even the economical necessities of the occasion. Whatever conflict exists is between the creditors and stockholders of the defunct

bank which has become insolvent in spite of the precautions taken by the act to prevent such a catastrophe and the individual officers of the Administrative Department charged with the duty under the Act to prevent it if possible. There is no conflict between the powers of the government in the matter.

The case of Tomasello v. Murphy, .... Fla. ...., 129 South. Rep. 328, merely holds that money held in escrow by a bank which afterwards becomes insolvent and whose affairs are placed by the Comptroller in the hands of a Liquidator is a special trust fund the owners of which are not creditors of the bank and a court of chancery has jurisdiction to determine the controversy which may arise between the Liquidator and the claimant to the fund.

The chancellor in this case did not appoint a receiver. He merely required the defendants to answer the bill of complaint. In view of those allegations we think the court had jurisdiction to grant the relief prayed.

As the writ of prohibition issues only to restrain an excess of jurisdiction and to prevent a court from proceeding when it has no jurisdiction, see State v. White, 40 Fla. 297, 34 South. Rep. 160; State v. Whitney, 66 Fla. 24, 63 South. Rep. 299; State ex rel. Swearingen v. Railroad Commission of Florida, 79 Fla. 526, 84 South. Rep. 444, the writ should be denied in this case.

BUFORD, C.J., concurs.