J. H. THERRELL, as Liquidator of the Biscayne Trust Company, a Florida corporation, *Appellant,* vs. R. L. RINAMAN, and INVESTMENT COMPANY OF NORTH AMERICA, INC., a Florida corporation, *Appellees.*

144 So. 327.
Division B.
Opinion filed October 22, 1932.

*Redfearn & Ferrell,* for Appellant;
*Carl T. Hoffman,* for Appellees.

DAVIS, J.—The Legislature of the State of Florida, by the enactment of Section 19 of Chapter 13576, Acts of 1929, Laws of Florida (Section 6102 C. G. L. 1932 Supplement), provided as follows:

"On becoming satisfied, from the reports furnished to him by a State bank examiner, or upon other satisfactory evidence thereof, that any bank, banking firm, banker,

banking or trust company, or corporation doing business in this State under the State laws, has become insolvent and is in default, or that the affairs of any bank, banker, banking firm or trust company or corporation doing business in this State, under such State laws, is in an unsound condition, or threatened with insolvency because of illegal or unsafe investments, or that its liabilities exceed its assets, or that it is transacting business without authority of law or in violation of law, or if the directors of any bank, banking or trust company, or corporation, or any banker or the management of any banking firm doing business in this State under the State laws, shall knowingly violate, or knowingly permit any of its officers, agents or servants to violate any of the provisions of law relative to any such bank, bankers, banking firms, banking or trust companies, or corporations doing business in this State, the rights, privileges and franchises shall be subject to be forfeited, and the State Comptroller may in his discretion forthwith designate and appoint a liquidator to take charge of the assets and affairs of such bank, and require of him such bond and security as the Comptroller deems proper, not exceeding double the amount that may come into his hands, and such liquidator shall be subject to dismissal by the Comptroller, whenever in his judgment such dismissal is deemed necessary or advisable; when one liquidator is dismissed, another may be duly designated and appointed. Such liquidator under the direction and supervision of the Comptroller, shall take possession of the books, records and assets of every description of such bank, banker, banking firm, banking and trust company, or corporation, and in his name shall sue for and collect all debts, dues and claims belonging to it, and upon the order of a court of competent jurisdiction may sell or compound all bad or doubtful debts, and, on a like order, may sell all the real and personal property of such bank, banker, banking firm, banking and trust company, or corporation, on such terms as the court shall direct; and may, if necessary, to pay the debts of such bank, banker, banking firm, banking and trust company, or corporation, sue for and enforce the individual liability of the stockholders. Such liquidator shall pay all money received by him to the State Treasurer to be held as a special de-

posit for the use and benefit of the creditors, subject to the order of the Comptroller, and shall also make quarterly reports to or when called upon, to the Comptroller of all of his acts and proceedings. * * *''

By other provisions of the statutes (Sections 6909 C. G. L., 4159 R. G. S., et seq.) the Comptroller of the State of Florida has been vested with the power and duty of winding up and liquidating the affairs of insolvent banks and trust companies, and the authority, powers and duties of the Comptroller and his statutory liquidator in such cases are controlled by such statute. That neither the Comptroller nor his liquidator have any powers except those which have been conferred upon them by provisions of statute law, either in express terms or by necessary implication, or such as are incident to the express powers given, is a proposition which is not capable of successful contradiction. Bryan v. Bullock, 84 Fla. 179, 93 Sou. Rep. 182; Power v. Chillingworth, 93 Fla. 1030, 113 Sou. Rep. 280.

On June 11, 1930, the Biscayne Trust Company suspended business and the Comptroller of the State of Florida, as was his right and duty under the statutes, took possession, custody and control of said institution by reason thereof. And in the exercise of the authority by law in him vested, said Comptroller appointed the appellant, J. H. Therrell, as liquidator of the defunct institution, which appointment was in due course confirmed by the Circuit Court.

The said J. H. Therrell, as such liquidator of the Biscayne Trust Company, was entering into negotiations with the Reconstruction Finance Corporation of the United States* and one Julia Mooney, for the purpose

---

*Created by an Act of the U. S. Congress entitled: "An Act to Provide Emergency Financing Facilities for Financial Institutions, to Aid in Financing Agriculture, Commerce and Industry, and for Other Purposes," approved January 22, 1932, Sec. 604 U. S. Code Ann. (Title 15, Chap. 15) Chap. 8, Par. 5, 47 Stat.

of borrowing from each and both of them money to be used for the following purposes: (a) To pay taxes and insurance on any and all properties now held and constituting a part of the general assets of the Biscayne Trust Company; (b) To pay interest on any and all indebtedness due and owing by Biscayne Trust Company, whether secured or unsecured by mortgage or other encumbrances, upon any of the property now held in and constituting a part of the general assets of the Biscayne Trust Company and where the Liquidator is legally obligated to make such payments; (c) To pay the expenses of reconditioning and rendering habitable any property held in and constituting a part of the general assets of the Biscayne Trust Company; (d) To pay attorney's fees, court costs, rents and salaries of necessary employees incurred in the conduct of the liquidation of said Biscayne Trust Company and the preservation of its assets; (e) To advance and pay taxes, insurance, costs, expenses and attorney's fees connected with the foreclosure of mortgages on property held by Biscayne Trust Company, individually and as trustee, for others, and any and all other charges and expenses in connection with the property for the conservation and preservation of such properties as are acquired by it individually and as trustee under foreclosure proceedings; (f) To satisfy mortgage encumbrances and refinance mortgage encumbrances on properties, the fee simple title to which is now or may hereafter become vested in or acquired by Biscayne Trust Company, or the Liquidator thereof, individually or as trustee, for the benefit of bondholders or trust beneficiaries through, or as a result of the foreclosure of trust deeds or mortgages or otherwise; (g) To pay dividends to the depositors and creditors of said Biscayne Trust Company.

R. L. Rinaman, as stockholder and common creditor

of the Biscayne Trust Company, and the Investment Company of North America, Inc., as a preferred creditor of said Biscayne Trust Company, brought a bill in equity against the liquidator to enjoin him from borrowing any money, or making any loans, and from pledging or attempting to pledge or incumbering or attempting to incumber the assets, either real or personal, of said Biscayne Trust Company, and from giving or attempting to give any person, firm or corporation, including the Reconstruction Finance Corporation of the United States any lien upon any of the insolvent company's assets as the result of any loan negotiated or attempted to be negotiated by the said Liquidator for any of the purposes mentioned.

After a hearing on bill and answer, the Court sustained the bill and granted the injunction as prayed. It is from the final decree so entered that this appeal has been prosecuted to this Court by the Liquidator.

Under the present laws of this State a bank receivership is purely statutory. The Legislature by providing a plain, complete and adequate method of statutory liquidation of insolvent banks, has divested the Courts of their ordinary chancery jurisdiction and prerogative to appoint receivers of State banks and in directing them and controlling them as officers of the Court, at least until the statutory method of administration has been duly alleged and proved to be inadequate to protect some legal or equitable right judicially asserted and prayed to be protected. State ex rel. Dade County Security Co. v. Barns, Circuit Judge, 99 Fla. 1258, 128 Sou. Rep. 860.; State ex rel. Knott v. Willmer, 102 Fla. 64, 135 Sou. Rep. 859; State ex rel. Landis, Attorney General, v. Circuit Court Eleventh Judicial Circuit, 102 Fla. 112, 135 Sou. Rep. 866.

Thus under the laws of this State as at present con-

stituted, the State Comptroller can only take possession of the property and business of a bank under the statute, and not as an officer of the Court, Bryan v. Bullock, 84 Fla. 179, 93 Sou. Rep. 182. By virtue of the statute the Comptroller takes possession, holds and administers the affairs of defunct banks and trust companies without the aid of, and even despite judicial action. See Bank of Bay Biscayne v. Hankins, 42 Fed. (2nd) 209; Amos v. Trust Co. of Fla., 54 Fed. (2nd) 286.

The liquidator whom the Comptroller is authorized by the statute to appoint, is an executive creature of the legislative enactment, and can exercise only such powers as those with which, by force of the statute he is expressly or impliedly vested. To put it another way, the Comptroller and his statutory liquidators are executive officials or functionaries of the State, and neither is an officer of the Court, which latter is required to adjudicate the fact of the bank's insolvency by confirming the Comptroller's initial act of taking possession and control. Florida Bank & Trust Co. v. Yaffey, 101 Fla. 653, 136 Sou. Rep. 399; State ex rel. Davis, Atty. Gen. v. Knight, 98 Fla. 891, 124 Sou. Rep. 461; Bushness v. Leland, 164 U. S. 684, 41 L. Ed. 598, 17 Sup. Ct. 209; Bennett v. Green, 156 Ga. 572, 119 S. E. 620.

The Legislature having to the extent hereinbefore stated, divested the Circuit Courts of their ordinary equity jurisdiction in the matter of taking charge of, and appointing receivers for the liquidation of insolvent state banks and trust companies, it follows that the assets of such banks or trust companies when taken over by the Comptroller, are thereafter to be considered as being in the legal possession, custody and control of a non-judicial state executive public officer, and that the power and authority of such non-judicial officer to deal with such assets must be found in the express or neces-

sarily implied powers concerning such assets which the statute has given the Comptroller and his liquidator in the premises.

While the Courts may not control the Comptroller and his liquidator in the lawful and proper discharge of their duties in administering the assets of a bank or trust company, entrusted to him by authority of an act of the Legislature and not by the court's injunctions and other remedies of judicial cognizance may, as in all other cases, be invoked to keep the Comptroller or his liquidator within their statutory jurisdiction and powers, to prevent an arbitrary exercise of power and to forestall any other unlawful or wrongful acts.

Therefore if the Comptroller or his liquidator, without authority of law, are about to borrow money for the purposes hereinbefore mentioned, or any of them, and the statutes do not authorize the Comptroller or his liquidator to borrow money and pledge the assets or properties of the defunct Biscayne Trust Company as security for the money borrowed, it follows that a Court of Equity, upon complaint of a proper party complainant disclosing some interest in the statutory administration which requires judicial protection, may enjoin and restrain the threatened unlawful action, it having been shown that there is an absence of a plain,, complete and adequate remedy at law to secure redress for the alleged wrong after the wrongful loan and pledge is consummated.

In the present case, in an able opinion filed in the Court below in support of the final decree awarding an injunction, the Chancellor said:

"* * * The Legislature of this State has by statute vested in the Comptroller the duty of winding up and liquidating the affairs of insolvent bank and trust companies, and his powers and authority, and the powers and duties of his liquidator in such cases are fixed by such

118

statutes, and these officers have no powers except those conferred upon them by the statutes, either in express terms or such as may be fairly implied, or such as are incident to the express powers given them by the statutes. The statutes of this State providing for the seizure of insolvent banks and trust companies, by the Comptroller, the appointment of liquidators therefor, the winding up and liquidation of such institutions, and the powers and duties of liquidators in connection therewith certainly do not in express terms authorize liquidators to borrow money for the purposes set forth in the agreement set out in the bill of complaint; nor can it be said that any such authority can be implied therefrom, nor that such a power is incidental to the express powers conferred. Therefore, without such express, implied or incidental power, or authority, given to the liquidator to borrow money and pledge assets of the institution in liquidation to secure the payment of such borrowed funds, no authority exists for the liquidator to borrow money for the purposes mentioned in the agreement between the liquidator and Mrs. Julia Mooney, nor for any other purpose.

To terminate the business, conclude the affairs and convert the assets of distressed financial institutions into cash and distribute the same to the creditors entitled thereto and the surplus, if any, to the stockholders, expeditiously and without undue delay, is in my opinion the object and purpose of the laws of Florida, establishing our system of winding up and liquidation of insolvent institutions. To grant to a liquidator the power to borrow money and for such loans pledge the assets of the institution in liquidation, would necessarily mean the delaying of the winding up and ultimate liquidation of the institution, the increasing of the expense of administration of liquidation, and the saddling upon the liquidation new creditors with a prior and preferred status in a position superior to that of other creditors of the institution in liquidation, and affording opportunity to liquidators to delay or suspend the expeditious liquidation

of the unfortunate institution, with perhaps the hope and upon the speculation of an early return to prosperity to the community in which such institution is located.

While it may be that the liquidator in the instant case may feel that it would be of much benefit to the liquidation, and to the relief of the creditors of the institution in liquidation to borrow money and pledge assets of the institution as security for the payment thereof, yet in our opinion he is without authority to do so.

It follows that the injunction sought herein by the Complainants should be granted.

WORTH W. TRAMMELL, JUDGE.''

Section 19 of Chapter 13576, *supra*, authorizes the bank supervisory authorities, upon taking possession of an insolvent bank or trust company, to collect the assets thereof and to preserve, administer and *liquidate* the business and assets of such bank or trust company for the benefit of depositors and others having an interest therein.

There is nothing in that Chapter or in any other provision of the banking laws, that expressly or impliedly confers authority on the Comptroller or his liquidator or which empowers the courts to authorize them, or either of them, to borrow money and pledge the assets of the bank to secure payment of a loan which is to be used principally, if not wholly, to pay preferred claims as well as dividends to the creditors of common depositors. Whether a loan can be made by a bank liquidator for any other purpose such as paying taxes on assets and the like, is not necessary to be definitely decided at this time and is not passed upon in this case.

The Comptroller and his liquidator being without power under our present statutes to borrow money and to pledge assets of a defunct bank or trust company's estate for the purpose of paying dividends to creditors,

depositors or for other like purposes, the Court may not confer such power in the absence of some statutory authority permitting them to do so, even to make effective an Act of the Congress of the United States such as that which brought about the existence of the Reconstruction Finance Corporation with its powers to make loans to State authorities for such purposes.

Several recent cases from other States* have been cited to us in support of the contention that the decree appealed from should be reversed. Some of these cases have approved and upheld the authority of bank administrators to borrow money and pledge the defunct bank's assets as security for the loans made. But in all of them where the authority to borrow and pledge has been upheld, it was on the theory that in those States the statutory bank receiver was in effect also an officer or a receiver acting in aid of the jurisdiction of the Chancery Court, which in those States was deemed to have supervisory control over the defunct bank's administration by the statutory officers.

---

*The cases referred to are: Blades v. Hood, 203 N. C. 56, 164 S. E. 828; State ex rel. Sim v. Superior Court (Wash.) 13 Pac. (2nd) 892; Bassett v. The Merchants Trust Co., 115 Conn. 530, 161 Atl. 789; Riches v. Haddock (Utah) 15 Pac. (2d) 233, (opinion of Superior Court of Utah filed April 26, 1932, not yet reported). In each of the first three of these cases, where the power of the banking commissioners to borrow money was sustained, it was upheld on the theory that under the statutes of those states the banking commissioners were under the continued supervision of the equity courts, and that such officers in effect acted as officers of the equity courts, though appointed as such ex officio by statute. In the Utah case the court held that since the statute of Utah took from courts of chancery the power to appoint court receivers for insolvent banks, it also took from the state bank supervisors all status as court officers, which made it impossible for them to be invested by the equity courts with authority to do the things ordinarily permitted an equity receiver, including the power to borrow money. The statutes of Florida have been construed by the State and Federal Courts of this jurisdiction as being of similar import to the Utah statutes under which the right of the statutory receiver of a defunct bank to borrow money from the United States Reconstruction Finance Corporation was denied. See State ex rel. Knott v. Willmer, 135 Sou. Rep. 859, and other cases to same effect cited in the body of the opinion.

In Florida Bank & Trust Co. v. Yaffey, 102 Fla. 723, 136 Sou. Rep. 399, this Court has held on this point:

"A bank liquidator in this State, under the statutes providing for his appointment and controlling his duties, is a representative or agent of the Comptroller, and is not an officer of the court which has confirmed the fact of the bank's insolvency thereby warranting his appointment."

This ruling has been followed likewise in this jurisdiction by the Federal Courts. See Bank of Bay Biscayne v. Hankins, 42 Fed. (2nd) 209; Amos v. Trust Co. of Fla. 54 Fed. (2nd) 286. See also Port Newark National Bank v. Waldron, 47 Fed. (2nd) 296.

We are therefore compelled to look to our own banking statutes for any authority of the Comptroller or liquidator of an insolvent bank or trust company to borrow money and pledge the bank's assets as security therefor, and finding that no such power has been expressly or impliedly given, we must hold that none exists, and in consequence thereof must reach the same conclusion as that which was reached by the Circuit Judge, whose judgment in that respect being correct, should be affirmed.

Affirmed.

WHITFIELD, P.J., AND TERRELL, J., concur.

BUFORD, C.J., AND BROWN, J., concur in the opinion and judgment.