STATE, *ex rel.* M. A. SMITH, as Liquidator of Dade County Security Company, and J. M. LEE, as State Comptroller, v. ARTHUR GOMEZ, THOMAS S. NEWCOMB, MINNIE NEWCOMB, a widow, BERTHA CLARK, F. FOSTER LADD, and the JUDGES OF THE ELEVENTH JUDICIAL CIRCUIT OF THE STATE.

179 So. 651.

Opinion Filed January 5, 1938.

*John M. Murrell,* for Relators;

*Lee M. Worley, John Bouvier, M. Lewis Hall* and *Whitfield & Whitfield* (of Tallahassee), for Respondents.

CHAPMAN, J.—This is a proceeding in prohibition, a case of original jurisdiction. It has been made to appear that the Honorable H. F. Atkinson, one of the Judges of the Circuit Court of Dade County, Florida, on August 5, 1935, upon the application of Thomas S. Newcomb and Minnie Newcomb, *et al.,* holders of Liquidator's certificates of Dade County Security Company, granted a restraining order against the Liquidator and Comptroller from carrying into effect a sale of the most valuable portion of the assets of Dade County Security Company to Miami Mortgage & Realty Company for $1,000,000.00 in cash. Answers were filed, evidence taken and motions to dissolve were heard by Honorable Paul D. Barns, one of the Judges of the Circuit Court of Dade County, Florida, in the absence of Judge Atkinson from the Circuit, and on September 5, 1935, an order was entered dissolving and vacating the temporary injunction or restraining order previously issued and additional time allowed for filing an amended bill of complaint and December 4, 1935, further time was by the court granted Thomas S. Newcomb, Minnie Newcomb, a widow, Bertha Clark, *et al.,* for leave and authority to file an amendment to the bill of complaint, later on subsequent orders were entered by the court extending the time in which to file the amendment, when on December 15, 1936, Thomas S. Newcomb, *et al.,* filed: (a) a petition by stockholders for allowance of costs, expenses and attorneys' fees; (b) petition by attorneys for allowance of attorneys' fees; (c) petition by stockholders for allowance of costs, expenses and attorneys' fees; (d) petition at common law; and (e) a petition of attorneys for allowance of attorneys' fees. The applications (a), (b), (c), (d) and (e), broadly speaking,

requested an order or orders of the court for costs, expenses and attorneys' fees by the Chancellor for obtaining the issuance of a restraining order by Honorable H. F. Atkinson under date of August 5, 1935, and which was later dissolved by Honorable Paul D. Barns, a Judge of said Circuit Court, on the 5th day of September, 1935.

The items referred to in this opinion as (a), (b), (c), (d) and (e), *supra,* were each attacked by the Comptroller and Liquidator by motion to strike on the ground that the Circuit Court of Dade County, Florida, was without jurisdiction to grant the relief prayed for in each of said petitions. The applications were heard by Honorable Arthur Gomez, one of the Judges of the Circuit Court of Dade County, Florida, and after argument of counsel on the 3rd day of November, 1937, made and entered an order denying each of said motions to strike and in effect holding that the Circuit Court of Dade County had jurisdiction by statute necessary for the making of order or orders on each of the petitions referred to herein as (a), (b), (c), (d) and (e). The petition prays that a writ of prohibition be issued prohibiting the Honorable Arthur Gomez, Judge, *supra,* from exercising any jurisdiction in the chancery suits or common law action. It is the contention of counsel for respondents that bringing the suit by liquidator's certificate owners of the Dade County Security Company in the form of a class suit and obtaining a temporary restraining order not only preserved the assets, but proved beneficial to all liquidator's certificate holders of the Dade County Security Company. The equity suit upon which the restraining order issued was for the use and benefit of all certificate holders. The case of United States v. Equitable Trust Company of New York, 283 U. S. 738, 51 Sup. Ct. Rep. 639, 75 L. Ed. 1379, is cited and relied upon by counsel for respondents. A similar prin-

ciple of law is expressed in Perry on Trusts and Trustees, Volume 2 (6th Ed.), par. 910, pages 1473-74-75, viz.:

"Trustees have an inherent equitable right to be reimbursed all expenses which they reasonably and properly incur in the execution of the trust, and it is immaterial that there are no provisions for such expenses in the instrument of trust. If a person undertakes an office for another in relation to property, he has a natural right to be reimbursed all money necessarily expended in the performance of the duty. And for losses that may accrue to himself in the proper administration of the trust. (a) Thus a trustee will be reimbursed all his necessary travelling expenses, and all reasonable fees paid for legal advice in the discharge of his duties. (b) And this rule will be applied, although the trust may subsequently be declared void, if the trustees were without blame in the matter. So trustees will be allowed all the expenses of litigation concerning the fund, and all costs which they are ordered to pay to strangers, if the litigation was forced upon them, or was necessary for the protection of the estate; but if a trustee is deprived of his costs, or ordered to pay costs by reason of his own misconduct, or if the suit was improperly instituted by him, he cannot be allowed for such disbursements, but he must bear them personally as a penalty for his misconduct. Nor can a trustee be allowed his expenses in defending himself upon an inquisition of insanity. Allowance for legal expenses and costs are always within the discretion of the court, and such claims can be modified and reduced, if in the judgment of the court they are unreasonable. Interest upon such payments will not be allowed to a trustee, although he had no trust money in his hands at the time of the payment. A trustee can receive pay only for such services and expenses as are within the line of duties imposed on him by the instrument creating the trust."

This Court has previously passed upon the question whether a court of equity may substitute its Receiver for the Liquidator appointed by the Comptroller under the statutes of Florida to wind up the affairs of the insolvent banking company. The Comptroller under these statutes is required to perform official acts throughout the State and may be amenable to the jurisdiction of the courts where official acts, the subject of litigation in such courts, have been performed. The statutes authorize the Comptroller to appoint liquidators through whom the Comptroller shall administer the assets of insolvent banking companies. If it should be made to appear that the Comptroller, or his liquidators, violate the law in such administration, the courts may adjudicate controversies or afford relief as to the particular matters that may be involved in such statutory administration. In the case of State, *ex rel.* Dade County Security Co., v. Barns, 99 Fla. 1258, 128 Sou. Rep. 860, this Court said:

"* * * But the law does not contemplate that the entire statutory administration of the affairs of an insolvent bank or building and loan association shall be superseded by equity proceedings through a chancery receiver, at least unless it is clearly shown by due allegations and proofs that the statutory administration is inadequate to conserve property rights that are secured by the Federal and State Constitutions. The bill of complaint entertained by the circuit judge seeks to have an equity receiver supersede the statutory liquidator with reference to the entire administration of the affairs of the insolvent building and loan association to the exclusion of the Comptroller's statutory authority, without any showing whatever to give a court of equity jurisdiction to afford the relief prayed for, or any relief consistent with that prayed for."

Prior to the legislative enactment, insolvent banking com-

panies may have been voluntarily liquidated under the supervision of a receiver appointed by a court of equity. The statutes authorizing the State Comptroller to supervise the administration of assets of an insolvent bank or trust company does not take from the Circuit Court any of its inherent exclusive equity jurisdiction under the Constitution. This rule was fully expressed in State, *ex rel.* Landis, v. Circuit Court, *et al.,* 102 Fla. 112, 135 Sou. Rep. 866, viz.:

"* * * And when such administrative authority is conferred upon the State Comptroller, the statutory authority of the circuit court may be thereby curtailed, though the inherent equity powers of the court to take jurisdiction when the statutory remedy through the State Comptroller is wholly inadequate to conserve organic rights, is not and cannot be impaired by statute. While the authority of the Comptroller to administer must be recognized, the courts have power to enforce rights during the administration by the Comptroller by due course of law. * * *

"The prayer of the bill of complaint filed by Will Allen is that the court appoint a receiver for each of the two trust companies and empower the receiver to immediately take possession, custody and control of all books, records, papers, documents, collateral money and other things of value held in trust or otherwise by said trust companies, that the directors be enjoined from attempting to act as trustees under the Act of 1911; that the court 'enter such decree as will enable the receiver appointed by the court to administer and liquidate the affairs of said City Trust Company and said Guardian Trust Company under and in accordance with the statutes and under the provisions of the laws of the State of Florida in such case made and provided and under and in accordance with the principles of equity;' that designated incidental injunctions be granted and that 'your com-

plainant' have 'such other and further relief as to this court may seem meet and proper.'

"While upon proper parties being made the allegations of the bill of complaint filed by Will Allen may be sufficient for particular relief that would not exclude the statutory authority of the Comptroller who sought intervention and was denied, yet, as the *bill prayed for an equity receiver* of all of the assets of the trust companies shown to be insolvent to the entire exclusion of the statutory authority of the Comptroller, *the object of the bill of complaint was not within the inherent powers of a court of equity under the statutes above quoted.* See State v. Wilmer, decided at this term; State v. Barns, 99 Fla. 1258, 128 So. 860, 46 Fed. (2) 296." (The emphasis last above is supplied.)

This Court had before it a similar case of State, *ex rel.* Landis, v. Circuit Court, etc., 106 Fla. 387, 143 Sou. Rep. 351, when it said:

"The State of Florida, upon the relation of the Attorney General, applied to this Court for a writ of prohibition challenging the jurisdiction of the circuit court to make and enter such order and to further act in the premises. A rule to show cause was issued and answers have been filed by the respondent circuit judge and the respondent members of said committee. The relator has filed motions to strike certain parts of the answer, and has also filed motion for a peremptory writ. We will dispose of the case upon the latter motion.

"The Constitution of this State, Section 11, Art. V, confers original jurisdiction upon the circuit courts 'in all cases in equity, also in all cases at law cognizable by inferior courts, and in all cases involving the legality of any tax, assessment, or toll; of the action of ejectment and of all actions involving the titles or boundaries of real estate, and of all criminal cases not cognizable by inferior courts;

and original jurisdiction of actions of forcible entry and unlawful detainer, and of such other matters as the Legislature may provide.'

"It has been well said that, under our tripartite scheme of government, 'such other matters as the Legislature may provide' could have reference to none other than judicial matters or functions. Sheldon v. Powell, 99 Fla. 782, 120 So. 258.

"Without deciding whether or not the Legislature could confer upon the circuit courts as a proper judicial matter or function jurisdiction to make such an order as is involved here, and to perform such functions as is contemplated by such order, there exists no such statutory provision, and we do not think that such jurisdiction is inherent in the court.

"The affairs of insolvent banks and trust companies are by law placed in the hands of administrative officers charged with the duty of supervision, and the courts should not interfere except in proper cases under valid statutes, or when justiciable matters are presented to them for decision. See Bank of Bay Biscayne v. Hankins (C. C. A.) 42 F. (2d) 209.

"The answers of the respondents do not set up sufficient response to the rule, and this Court, being of the opinion that the circuit court is without jurisdiction to make the order involved here and to act as is contemplated by such order, the motion of relator for a peremptory writ of prohibition should be granted as prayed for. State v. Circuit Court for Eleventh Judicial Circuit (Fla.) 135 So. 866; Id. (Fla.) 135 So. 870."

In the case of Therrell, Liquidator, v. Rinaman, 107 Fla. 110, 144 Sou. Rep. 327, this Court said:

"By other provisions of the statutes (Sections 6909 C. G. L., 4159 R. G. S., *et seq.*) the Comptroller of the State

of Florida has been vested with the power and duty of winding up and liquidating the affairs of insolvent banks and trust companies, and the authority, powers and duties of the Comptroller and his statutory liquidator in such cases are controlled by such statute. That neither the Comptroller nor his liquidator have any powers except those which have been conferred upon them by provisions of statute law, either in express terms or by necessary implication, or such as are incident to the express powers given, is a proposition which is not capable of successful contradiction. Bryan v. Bullock, 84 Fla. 179, 93 Sou. Rep. 182; Power v. Chillingworth, 93 Fla. 1030, 113 Sou. Rep. 28. * * *

"Under the present laws of this State a bank receivership is purely statutory. The Legislature by providing a plain, complete and adequate method of statutory liquidation of insolvent banks, *has divested the courts of their ordinary chancery jurisdiction and prerogative to appoint receivers of State banks* and in directing them and controlling them as officers of the court, at least until the statutory method of administration has been duly alleged and proved to be inadequate to protect some legal or equitable right judicially asserted and prayed to be protected. State, *ex rel.* Dade County Security Co. v. Barns, 99 Fla. 1258, 128 Sou. Rep. 860; State, *ex rel.* Knott, v. Wilmer, 102 Fla. 64, 135 Sou. Rep. 859; State, *ex rel.* Landis, Attorney General, v. Circuit Court Eleventh Judicial Circuit, 102 Fla. 112, 135 Sou. Rep. 866.

"Thus under the laws of this State as at present constituted, the State Comptroller can only take possession of the property and business of a bank under the statute, and not as an officer of the Court. Bryan v. Bullock, 84 Fla. 179, 93 Sou. Rep. 182. By virtue of the statute the Comptroller takes possession, holds and administers the affairs of defunct banks and trust companies without the aid of, and

even despite judicial action. See Bank of Bay Biscayne v. Hankins, 42 Fed. (2d) 209; Amos v. Trust Co. of Fla., 54 Fed. (2d) 286.

"The liquidator whom the Comptroller is authorized by the statute to appoint, is an executive creature of the legislative enactment, and can exercise only such powers as those with which, by force of the statute he is expressly or impliedly vested. To put it another way, the Comptroller and his statutory liquidators are executive officials or functionaries of the State, and neither is an officer of the Court, which latter is required to adjudicate the fact of the bank's insolvency by confirming the Comptroller's initial act of taking possession and control. Florida Bank & Trust Co. v. Yaffey, 101 Fla. 653, 136 Sou. Rep. 399; State, *ex rel.* Davis, Atty. Gen. v. Knight, 98 Fla. 891, 124 Sou. Rep. 461; Bushness v. Leland, 164 U. S. 684, 41 L. Ed. 598, 17 Sup. Ct. 209; Bennett v. Green, 156 Ga. 572, 119 S. E. 620.

"The Legislature having to the extent hereinbefore stated, *divested the Circuit Courts of their ordinary equity jurisdiction in the matter of taking charge of,* and appointing receivers for the liquidation of insolvent State banks and trust companies, it follows that the assets of such banks or trust companies when taken over by the Comptroller, are thereafter to be considered as being in the legal possession, custody and control of a non-judicial State executive public officer, and that the power and authority of such non-judicial officer to deal with such assets must be found in the express or necessarily implied powers concerning such assets which the statute has given the Comptroller and his liquidator in the premises.

"While the courts may not control the Comptroller and his liquidator in the lawful and proper discharge of their duties in administering the assets of a bank or trust company, entrusted to him by authority of an Act of the Legis-

lature and not by the court's injunctions and other remedies of judicial cognizance may, as in all other cases, be invoked to keep the Comptroller or his liquidator within their statutory jurisdiction and powers, to prevent an arbitrary exercise of power and to forestall any other unlawful or wrongful acts."

See Fifer v. Williams, 5 Fed. (2nd) 286, text p. 287.

The statutes of Florida authorizing the Comptroller, through his agent liquidator, to proceed and wind up the business of insolvent banking companies in Florida are patterned largely after the Federal statutes conferring similar authority on the Comptroller of Currency and the decisions of the Supreme Court of Florida. It will be observed that a court of equity has no jurisdiction to administer upon the assets of an insolvent banking company with the possible exception of fraud or some other unlawful or inequitable irregularity. The language used by the Judge, Paul D. Barns, in his order of September 5, 1935, is: "Taking into consideration the law applicable to defunct banking institutions and the facts adduced at the hearing, I find no actual fraud and neither do I find that the facts establish a constructive fraud."

This Court, by an unbroken line of decisions, has reiterated the rule that the findings of the Chancellor on facts where the evidence is heard by him, and the witnesses are before him, are entitled to weight and should not be disturbed unless clearly erroneous. See Harrison v. Farrington, 95 Fla. 769, 116 Sou. Rep. 497.

"In conformity with the previous decisions of this Court we hold, in the absence of fraud, the lower court was without authority to grant the relief sought by the petitions identified in this opinion as (a), (b), (c), (d) and (e)."

The second question for consideration in this record is: from the allegations of the petition and the facts appearing

in the certified copy of the transcript and the law applicable thereto, is the relator entitled to the issuance of a writ of prohibition as prayed? In the case of State, *ex rel.* Burbride, v. Call, Judge, 41 Fla. 450, text pages 456-57-58, 26 Sou. Rep. 1016, 79 Am. St. Rep. 189, this Court said: ·

"It is said in High's Ex. Legal Rem., *supra:* 'The interference in such cases would, if tolerated, speedily absorb the entire time of appellate tribunals in revising and superintending the proceedings of inferior courts, and the embarrassments and delays of iltigation would soon become insupportable, were the jurisdiction by mandamus sustained in cases properly falling within the appellate powers of the higher 'courts.' Other reasons equally as potent support the rule. Where the judge makes a ruling upon a question presented by proper pleadings in a pending cause, from which an appeal lies, it is manifestly more appropriate to pursue the remedy by appeal where the party benefited by the ruling will be legally entitled to be heard in support thereof, than to adjudicate the question in a proceeding to which he is not a party. * * *

"In the case before us it is shown that respondent, in a chancery case pending before him, upon a motion duly presented and argued by the parties interested, made an interlocutory decree whereby an order of publication and the publication had thereon and the service upon a non-resident defendant administratrix sought thereby were set aside and held for naught. There is no allegation that respondent has declined to pass upon any question presented to him in the cause, but the complaint is that he decided the motion erroneously, and the application to this Court is to compel him to undo his alleged erroneous decision by setting aside and annulling the interlocutory decree referred to. The relators contend that this· decree is nothing more ·nor less than a decision that the court has not jurisdiction over the

defendant administratrix and a refusal to proceed further in the cause. If we should admit this to be correct, it does not follow that an appeal from this order would not accomplish the same purpose as is sought by this writ, and in a manner that will entitle the defendant administratrix to be heard and relieve the judge from the burden of defending personal litigation respecting his official decisions. * * *"

Likewise in Curtis v. Albritton, 101 Fla. 853, 132 Sou. Rep. 677, this Court said:

"Jurisdiction of the subject matter means the power of the court to adjudicate the class of cases to which the particular case belongs. Crill v. State Road Dept., *supra.*

"Like all other extraordinary remedies, prohibition is to be resorted to only when the ordinary remedies are inadequate to give redress (Crandall's Fla. Common-Law Practice, 662) and the writ will not issue in every case of irregularity in the proceeding. Spelling, Injunctions and Other Extraordinary Remedies (2d Ed.) Sec. 1724. When in an ordinary action in an inferior court of record, it is alleged the court has not jurisdiction over the person, the proper remedy is to get the decision of the court upon that question and review such decision upon an appeal from the judgment. Spelling, Injunctions and other Extraordinary Legal Remedies (2d Ed.) Section 1724; Crandall's Fla. Common-Law Practice, 662."

Also in State, *ex rel.* Meredith, v. Board Trustees Salvation Army, 102 Fla. 219, 135 Sou. Rep. 781, it was said:

"The issuance of a writ of prohibition to stop further proceedings in an equity case is undoubtedly authorized where no special circumstances are alleged in the bill of complaint bringing the case under some recognized head of equity jurisdiction warranting the relief prayed for, even though there is not a complete absence of *any* jurisdiction

over the *class* of suit involved. State v. Railroad Commission, 79 Fla. 626, 84 So. 444; State v. White, 40 Fla. 297; 24 So. 160; People, *ex rel.* L'Abbe, v. District Court of Lake County, 26 Col. 386, 58 Pac. 604, 46 L. R. A. 850.

"But where an appeal lies from an interlocutory order, a writ of prohibition is only authorized where the remedy by appeal from such interlocutory order *is not plain, speedy and adequate.* State v. Wood, 155 Mo. 425, 56 S. W. 474, 48 L. R. A. 596; State v. Reynolds, 107 S. W. 487, 15 L. R. A. (N. S.) 963.

"In this case it has not been made to appear that an appeal from the interlocutory order granting the injunction complained of would not be a plain, speedy and adequate remedy for the petitioner in this case, and for that reason it would not be proper to grant the writ of prohibition absolute as prayed."

For the reasons stated the writ absolute should issue and it is so ordered.

ELLIS, C. J., and WHITFIELD, TERRELL and BUFORD, J. J., concur.

BROWN, J., disqualified.