229 So.2d 302 (1969)
BAY NATIONAL BANK AND TRUST COMPANY, Panama City, Florida, Appellant,
v.
Fred O. DICKINSON, As Comptroller of the State of Florida and State Commissioner of Banking, et al., Appellees.
No. L-442.
District Court of Appeal of Florida. First District.
December 18, 1969.
*303 Truett & Watkins, Tallahassee, and Davenport, Johnston & Harris, Panama City, for appellant.
Earl Faircloth, Atty. Gen., T.T. Turnbull and William L. Camper, Asst. Attys. Gen., and Thomas Sale, Jr., Panama City, for appellees.
WIGGINTON, Judge.
Appellant seeks review of a final judgment dismissing with prejudice its complaint for a declaratory judgment on the ground that it failed to state a cause of action.
From the allegations of the complaint it affirmatively appears that appellant is a banking corporation licensed and doing business in Panama City. Appellee Dickinson, as State Commissioner of Banking, approved an application made by the named appellees for authority to organize a corporation to transact a general banking business *304 in the adjoining community of Springfield, some three miles distant from the banking facility operated by appellant. The Commissioner's certificate of authorization was issued by him after investigation but without having first conducted a public hearing on the application. Based upon such authorization, the appellee Tom Adams, as Secretary of State, issued to the applicants therefor articles of incorporation as authorized by law. Appellant contends that the law mandatorily requires the Commissioner to hold a public hearing on every application made to him for approval to engage in the banking business in order that all interested parties might appear, offer evidence, cross-examine witnesses, and otherwise engage in an adversary proceeding on the merits of the application. Appellant contends that failure of the Commissioner to hold such a public hearing in this case violated the provisions of the statutes of this state and deprived it of procedural due process as guaranteed by the Constitutions of the State of Florida and the United States. The complaint prays for a declaration of its rights in the premises, and for judgment finding that the Commissioner abused his official discretion in approving appellees' application without a formal public hearing thereon, thereby rendering void his certificate of authorization to transact a banking business in this state.
The Commissioner's approval of appellees' application was granted pursuant to the authority of the Banking Code contained in Chapter 659, F.S. The Code requires that a written application for authority to establish a corporation to engage in the banking business shall contain the information specified in the Code.[1] Upon receipt of such application, the Commissioner is required to make an investigation of certain enumerated factors, and based upon a consideration of such factors he shall in his discretion determine whether the application shall be approved.[2] The Code is devoid of any requirement that a public hearing of any nature be held by the Commissioner before reaching his decision as to whether the application should be granted or denied. In passing upon such an application the Commissioner performs a purely quasi-legislative or quasi-executive function. His consideration of the application does not constitute an adjudication of rights vested in any person or corporation, but is an administrative determination as to whether a requested right shall be granted. In performing this function the Commissioner is required to comply with the provisions of the Code, and to exercise a sound discretion in reaching his final decision. If he violates any of the provisions of the Code in the handling of such application, acts capriciously, arbitrarily, fraudulently or in such manner as to amount to a gross abuse of discretion, his action may be enjoined and other appropriate relief granted at the suit of any interested party adversely affected.[3]
Such conclusion was reached by this court in National Bank of Tampa v. Green.[4] In the Green case an existing bank sought to enjoin the Banking Commissioner from approving an application filed with him by a group of incorporators for authorization to engage in the banking business in Tampa. The complaint sought injunctive and declaratory relief on the ground that the Commissioner had failed to make a proper investigation and failed *305 to fully consider relevant evidence pertaining to the factors specified in the Banking Code. Although conceding that the Commissioner is accorded a wide latitude of discretion in granting or withholding approval of an application to engage in the banking business, we nevertheless held that his actions in this regard are subject to review by the courts under proper circumstances. In that case we said:
"Since we hold that the Commissioner's discretion in approving an application for a bank charter is not absolute but is rather a discretion the exercise of which is conditioned by the several statutory limitations discussed above, we further hold that, if the Commissioner acts or threatens to act in violation of such statutory limitations, his acts or threatened acts may be subjected to judicial review under the provisions of Section 659.56, Florida Statutes, F.S.A."
No question was raised in the Green case concerning the failure of the Commissioner to conduct a public hearing on the application then considered by him. It is our view, however, that the remedy for correcting any abusive or illegal acts committed by the Commissioner in the handling of such an application is by a suit for injunction and other relief as specified in the Code and quoted in the margin (see Footnote 3).
Appellant urges that even though the Banking Code contains no provision requiring a public hearing by the Commissioner as a necessary step in considering whether an application for authority to engage in the banking business should be granted or denied, that the approval or disapproval constitutes administrative action subject to the limitations and requirements of Chapter 120, F.S., the Administrative Procedure Act. Appellant points to that section of the Act which provides that: "Any party's legal rights, duties, privileges or immunities shall be determined only upon public hearing by an agency unless the right to public hearing is waived by the affected party, or unless otherwise provided by law."[5] The foregoing section is implemented by the next succeeding section which provides that: "Parties affected by agency action shall be timely informed by the agency of the time, place, and nature of any hearing; the legal authority and jurisdiction under which the hearing is to be held; and the matters of fact and law asserted. * * *."[6] Appellant asserts that it is vitally interested in the application of appellees in that the granting thereof will have a profound adverse effect upon its banking business located in the trading area to be served by appellees' newly chartered bank. On this premise appellant insists that procedural due process guaranteed by the Administrative Procedure Act required the Commissioner to hold a public hearing so that it would have the opportunity of appearing and offering evidence relevant to the statutory factors which must be considered by the Commissioner in determining whether the application should be approved.
We are unable to agree with appellant that the approval or disapproval by the Commissioner of the application in question under the terms and provisions of Chapter 659, F.S., falls within the purview of the Administrative Procedure Act. Part II of the Act dealing with administrative adjudication procedure sets forth the legislative intent as follows:
"It is the intent of the legislature to establish minimum requirements for the adjudication of any party's legal rights, duties, privileges or immunities by state agencies. * * *"[7]
This part of the Act which includes the provisions guaranteeing a public hearing *306 and providing for a proper notice thereof pertains solely to final orders entered by administrative agencies in the performance of a quasi-judicial function. In the recent case of Adams v. Board of Public Instruction of Okaloosa County,[8] in commenting upon Chapter 120, F.S., the Administrative Procedure Act, this court said:
"* * * In any event, it must be pointed out that the cause of action involved in Negrich [Negrich v. Dade County Board of Public Instruction, (Fla. App. 1962) 143 So.2d 498] accrued and was placed in litigation prior to the adoption by our legislature of Part III of the Administrative Procedures Act providing for judicial review of final orders or judgments rendered by state agencies in the exercise or quasi-judicial authority conferred upon them by law.
"In Board of Public Instruction of Duval County v. Sack [(Fla.App. 1968) 212 So.2d 819] this court held that if review is sought of a final order rendered by a purely local governmental agency in the exercise of a quasi-judicial power, it must be by petition for writ of certiorari to the appropriate circuit court. We further held, however, that if review is sought of a final order rendered by a state agency in the exercise of a quasi-judicial power, it must be by petition for writ of certiorari to the appropriate District Court of Appeal pursuant to the provisions of the Administrative Procedures Act, F.S. § 120.30 et seq., F.S.A."
The purpose of the hearing requirement of the Act is to insure that a proper record of the proceeding on which the final order is based will be made so that aggrieved parties may obtain judicial review of the order by the vehicle of certiorari as provided in § 120.31, F.S., of the Act. Such provision for judicial review is feasible only if a record of the proceeding is made in an adversary hearing pursuant to due and proper notice in which the rights of the parties affected are adjudicated by the agency having statutory supervision over the subject matter of the proceeding. The Act has no application to an agency order rendered in the performance of a quasi-executive or quasi-legislative function in which legal rights, duties, privileges, or immunities are not the subject of adjudication. Such orders as this are rendered pursuant to statutory authority based upon required inquiry and investigation, and involve the exercise of a discretion by the administrative officer or agency rendering it. If quasi-executive or quasi-legislative acts are performed in violation of the mandatory requirements of law, or are infected by fraudulent, capricious, or arbitrary action of the agency, they are subject to assault by appropriate proceedings in a court of competent jurisdiction. It is in such a proceeding as this that procedural due process is afforded, but not in the agency's prior consideration.
Appellant supports its position that a public hearing by the Commissioner is required by inviting our attention to the decision rendered by this court in Blood Service Plan Insurance Company v. Williams.[9] In that case the Insurance Commissioner conducted a public hearing on the application of the appellant for a certificate of authority to engage in the insurance business in this state. We characterized the hearing as being quasi-judicial in character and within the purview of Chapter 120, F.S., the Administrative Procedure Act. Appellant equates the application for a certificate of authority to engage in the insurance business in that case with the application of appellees for permission to engage in the banking business in the case sub judice, and contends that the same rule of law should apply in each case. Such contention wholly *307 overlooks or ignores the fact that the Insurance Code, under which the appellant insurance company in the Blood Service Plan case applied for a certificate of authority, specifically provided for a hearing when requested by an applicant.[10] Once the hearing is granted, it shall be conducted in accordance with the provisions of the Insurance Code as implemented by the Administrative Procedure Act. The Banking Code considered in the case sub judice has no comparable provision requiring the Commissioner to hold a hearing if requested to do so either by the applicant or by any other interested party. Appellant's reliance on the Blood Service Plan case is therefore misplaced.
We consider that the foregoing is sufficient to dispose of appellant's contention that the failure of the Commissioner to grant it a public hearing on appellees' application deprived it of statutory due process of law under the Banking Code and Administrative Procedure Act of this state. We now turn to its contention that such refusal impinged upon its state and federal constitutional right to due process. There being no decisions in this state bearing upon the issue presented, we examine the decisions of the federal courts in an effort to find whether the question has there been resolved.
The National Banking Act[11] authorizes the Comptroller of the Currency to receive and consider applications for national bank charters. He is required to make an investigation and consider factors similar in all material respects to those specified by the Florida Banking Code and discussed above. The National Banking Act provides that upon consideration of the factors specified therein, the comptroller shall in the exercise of his discretion either grant or deny the application for a charter.
In the case of Webster Groves Trust Company v. Saxon[12] a group of competing banks brought suit against the Comptroller seeking a judgment declaring a national bank charter theretofore issued by him to be unlawful and to require him to cancel the charter and conduct a formal hearing on the application theretofore granted. The objectors contended that due process of law required the Comptroller to conduct a public hearing on the application for a charter before considering whether it should be approved or denied, at which hearing they and all interested parties should have the right to present evidence and cross-examine witnesses concerning the relevant factors to be considered in passing upon the application. Such contention was grounded upon the provisions of the National Banking Act and the Federal Administrative Procedure Act.[13] In affirming a decision of the trial court dismissing the complaint filed by the objectors, the appellate court pointed out that the National Banking Act did not either directly or indirectly require the Comptroller to hold a public hearing on applications for bank charters filed with him. The court further held that the Administrative Procedure Act did not specifically require such a hearing in connection with applications for national bank charters. In its decision ths court said:
"* * * The Comptroller's practice for over one hundred years has been to proceed informally on these new bank applications. * * *
"The very nature of the decision required by the Comptroller indicates that a formal adversary type hearing would be of little benefit to him in the discharge of his discretionary powers. There is the further factor present that if bank applicants were subjected to severe public cross-examination, public *308 presentation of unfavorable evidence and were forced to disclose their future plans and programs to competitors, public confidence in the banking system could be adversely affected."
In holding that the Comptroller's action in granting or denying an application for a national bank charter is subject to judicial review, the court said:
"We agree that the action by the Comptroller is not subject to review by trial de novo, nor does it depend upon a showing of substantial evidence. Likewise, we are precluded from invading the province of the Comptroller's expertise and evaluating the sagacity of, or the policy behind, his actions. The Comptroller, however, must be subordinate to the law from which he received his authority, and is subject to the limitations imposed by that law. Therefore, if he acts in excess of his statutory grant of power, acts arbitrarily or capriciously, abuses his discretion, or unlawfully discriminates in violation of the Constitution, he is certainly subject to restraint by the courts. Though he may exercise the discretion the expertise of his office affords him, the congressional grant of authority does not empower arbitrary and capricious action, nor does it contemplate abuses of that discretion. * * *"
A similar conclusion was reached by the Fifth Circuit Court of Appeals in the case of Citizens Bank of Hattiesburg v. Camp.[14] The effect of these holdings is that failure or refusal of the Comptroller of Currency to grant a public hearing on applications filed with him for bank charters does not deny objectors or other interested parties constitutional due process. With this conclusion we agree.
Since we conclude that there is no lawful requirement for the Banking Commissioner to hold a public hearing preliminary to his approval or disapproval of an application for authority to organize a banking corporation to engage in the banking business in Florida, his failure to do so in the case sub judice did not violate any statutory or constitutional rights possessed by appellant. We agree with the trial court that based upon the allegations contained therein the complaint brought by appellant failed to state a cause of action and the judgment of dismissal was proper.
The judgment appealed is affirmed.
JOHNSON, Chief Judge, and SPECTOR, J., concur.
NOTES
[1] F.S. § 659.02, F.S.A.
[2] F.S. § 659.03, F.S.A.
[3] F.S. § 659.56, F.S.A., Injunction.

"Whenever a violation of this code is threatened or impending, and will cause substantial injury to a bank or trust company or to the depositors, creditors, or stockholders thereof, the circuit court is hereby granted jurisdiction to hear any complaint filed by the commissioner or any interested party, and, upon proper showing, to issue an injunction restraining such violation or granting such other appropriate relief. * * *"
[4] National Bank of Tampa v. Green, (Fla. App. 1965) 175 So.2d 545, 550.
[5] F.S. § 120.22, F.S.A.
[6] F.S. § 120.23, F.S.A.
[7] F.S. § 120.20, F.S.A.
[8] Adams v. Board of Public Instruction of Okaloosa County, Florida, (Fla.App. 1969) 225 So.2d 423, 424.
[9] Blood Service Plan Insurance Company v. Williams, (Fla.App. 1966) 186 So.2d 33.
[10] F.S. § 624.0123, F.S.A.
[11] 12 U.S.C. § 21 et seq.
[12] Webster Groves Trust Company v. Saxon, (8th Cir., 1966) 370 F.2d 381, 384, 385, 387.
[13] 5 U.S.C. § 1009(e).
[14] Citizens Bank of Hattiesburg v. Camp, (5th Cir., 1968) 387 F.2d 375.