PER CURIAM.
In this interlocutory appeal, appellant as Comptroller of the State of Florida and Ex-Officio State Banking Commissioner, seeks review of a trial court order granting appellee a temporary injunction against the holding of a hearing on the application for a branch office for American Savings & Loan Association under § 665.441, Fla. Stat., F.S.A. We are of the opinion that the temporary injunction entered herein was improvidently granted and accordingly reversed the order granting same.
Appellee was notified by appellant of the pending application for a branch office by American Savings & Loan and attached to the notice of public hearing was a set of rules and regulations for the conduct of the hearing. After appellee notified the appellant of its objection to the application and its intention to appear in opposition thereto at the hearing, appellee filed this action for declaratory and injunctive relief prior to the scheduled date of the hearing.[1] Appellee contended that it would suffer immeasurable and irreparable damage in the event the application of American Savings was granted since appellee had a substantial amount of depositors from the area sought to be serviced by American Savings. Appellee questioned the rules promulgated for the conduct of the hearing on the grounds that the same were not duly filed with the Secretary of State’s office as is required by the Administrative Procedure Act[2] and question was directed as to substantive deviations of the rules from rules for hearings appearing within the Administrative Procedure Act.[3] Pursuant to appellee’s prayer for relief the trial court entered a temporary injunction *605 restraining appellant from conducting the hearing in question. From that order this interlocutory appeal was perfected.
The central question presented in this appeal is whether the procedures and proceedings necessary to process an application for a branch office of a savings and loan association under § 665.441, Fla.Stat., F.S.A., are quasi-judicial in nature requiring the application of the Administrative Procedure Act [§ 120.011 et seq., Fla.Stat., F.S.A.] or do the proceedings partake of a quasi-executive or quasi-legislative function so as to fall outside of the Act?
§ 665.441(3), Fla.Stat., F.S.A., provides for the method in which an application for such a branch office is to be processed. It reads:
“ (3) Approval of establishment—
“Each application for approval of the establishment and maintenance of a branch office shall state the proposed location thereof, the need therefor, the functions to be performed therein, the estimated volume of business thereof, the estimated annual expense thereof, and the mode of payment therefor. Each such application shall be accompanied by a budget of the association for the current earnings period and for the next succeeding semiannual period, which reflects the estimated additional expense of the maintenance of such a branch office. Upon the receipt by the department of such an application, it shall notify other thrift institutions in the state and hold a hearing on said application, said notification and hearing following the procedure as set out in § 665.031(3). It shall determine whether the establishment and maintenance of such office will unduly injure any properly conducted existing association or federal association in the community where such branch office is proposed to be established. If it finds that no undue injury is likely to result and that the establishment and maintenance of such branch office is advisable, it may approve the application.”
The pertinent provisions of § 665.031 [4] Fla.Stat., F.S.A., (as amended 1972) sets out the specific standards and procedures to be followed by the Department. It provides :
“(3) Investigation by department.— Upon the filing of an application the department shall make an investigation of:
“(a) The character, financial standing, responsibility and experience of the persons named in the application to conduct the affairs of the thrift institution ;
“(b) The public need for a thrift institution or additional thrift institution, as the case may be, in the community where the proposed thrift institution is to be located, giving particular consideration to the present and future ability of the community to support both the proposed and all other existing thrift institutions in the community in the conduct of profitable operations.
“(4) Public hearing. — If, based upon the information contained in the application and developed through investigation, the department shall find favorable factors predominating, a public hearing shall be scheduled and notice thereof shall be given to any trade association in the state representing fifty percent (50%) or more of the associations located in the state. Such public hearing shall be held pursuant to rules and regulations promulgated by the department. Any interested person may appear in person or by agent or attorney and orally or in writing show cause upon any relevant ground why the application should not be approved.
*606 “(5) Decision by department. — The department shall approve or disapprove the application at its discretion but it shall not approve such application unless, in its opinion:
“(a) Public convenience and advantage will be promoted by the establishment of the proposed thrift institution;
“(b) Local conditions assure reasonable promise of the successful operation of the proposed thrift institution and of those thrift institutions already established in the community;
“(c) The proposed officers and directors have good character, sufficient financial standing, and adequate experience and responsibility to assure reasonable promise of the successful operation of the thrift institution; and
“(d) The proposed savings account capital and organization expense fund complies with the requirements of this chapter.”
We are of the opinion that the case sub judice is controlled by the decision of our sister court in the case of Bay National Bank and Trust Co. v. Dickinson, Fla.App.1969, 229 So.2d 302. In that cause, the appellant, a banking corporation licensed and doing business in Panama City, challenged .the authority of Dickinson, as State Commissioner of Banking, to approve an application of another corporation to organize a banking business in the adjoining community of Springfield, pursuant to Ch. 659, Fla.Stat., F.S.A.[5] The appellant contended that prior to any action by the Commissioner a public hearing was required under the provisions of the Administrative Procedure Act.[6] In reviewing the functions and duties of the Commissioner the court noted: (229 So.2d at 304)
“In passing upon such an application the Commissioner performs a purely *607 quasi-legislative or quasi-executive function. His consideration of the application does not constitute an adjudication of rights vested in any persons or corporation, but is an administrative determination as to whether a requested right shall be granted. In performing this function the Commissioner is required to comply with the provisions of the Code [Banking Code], and to exercise a sound discretion in reaching his final decision. If he violates any of the provisions of the Code in the handling of such application, acts capriciously, arbitrarily, fraudulently or in such a manner as to amount to a gross abuse of discretion, his actions may-be enjoined and other appropriate relief granted at the suit of any interested party adversely affected.”
The court, thus, found: (229 So.2d at 306)
“The Act [Administrative Procedure Act] has no application to an agency order rendered in the performance of a quasi-executive or quasi-legislative function in which legal rights, duties, privileges, or immunities are not the subject of adjudication. Such orders as this are rendered pursuant to statutory authority based upon required inquiry and investigation, and involve the exercise of a discretion by the administrative officer or agency rendering it.”
Appellee contends that the Bay National Bank case, supra, is not on point since it dealt with proceedings under Ch. 659, Fla. Stat., F.S.A., in which a public hearing was not required by the statute. This appellee submits is inherently different from the proceedings herein where there is a specific requirement for a public hearing.[7]
We do not believe that a statutory provision for a public hearing under certain circumstances ispo facto changes the quasi-executive or quasi-legislative function of the Commissioner as outlined in the Bay National Bank case. Thus, it has been found that certain legislative bodies acting in a legislative capacity retain that function notwithstanding a requirement of a public hearing on certain issues. See, e.g., City of Opa Locka v. State ex rel. Tepper, Fla.App.1972, 257 So.2d 100; Harris v. Goff, Fla.App.1963, 151 So.2d 642. Likewise, in the case sub judice, the acts of the Commissioner in passing upon the application for a branch office pursuant to Ch. 665, Fla.Stat., F.S.A., are acts within the exercise of a quasi-legislative or quasi-executive function and are not, therefore, subject to the provisions of the Administrative Procedure Act.
Accordingly, the order of the trial court temporarily enjoining the conduct of such a hearing is hereby reversed with directions for the chancellor to dismiss appel-lee’s complaint with prejudice.
Reversed and remanded with directions.

. § 665.491, Fla.Stat., F.S.A., provides for such a pre-hearing judicial intervention, “At any time after any controversy has arisen between the department and an association with respect to any question of law or regulation, or with respect to any questions involving immeasurable or irreparable damage to the association, and prior to an administrative or judicial hearing, . . .”

. § 120.041, Fla.Stat., F.S.A.

. Specifically, appellee argued that the rules promulgated by the Department were in conflict with the guidelines of §§ 120.26, 120.25(8), 120.25(1), 120.24, and 120.27, Fla.Stat., F.S.A.

. Appellee has argued that § 665.031, Fla.Stat., F.S.A., (as amended 1972) does not apply to the case sub judice and that the provisions of the statute as they existed prior to the amendment should have been applied. We have found this contention to be without merit.

. The procedures under Ch. 650, Fla. Stat., F.S.A., call for an investigation by the Department conducted in the following manner:
“659.08 Investigation by department. —
“(1) Upon the filing of an application, the department shall make an investigation of:
“(a), The character, reputation, financial standing and motives of the organizers, incorporators and subscribers in organizing tire proposed bank or trust company.
“(b) The need for banking or trust facilities or additional banking or trust facilities, as the case may be, in the community where the proposed bank is to be located, giving particular consideration to the adequacy of existing banking or trust facilities and the need for further banking or trust facilities in the locality.
“(c) The present and future ability of the community to support the proposed bank or trust company and all other existing banking or trust facilities in the community.
“(d) The character, financial responsibility, banking experience and business qualifications of the proposed officers.
“(e) The character, financial responsibility, business experience and standing of the proposed stockholders and directors.
“(2) The department shall approve or disapprove the application, in its discretion, but it shall not approve such application until, in its opinion:
“(a) Public convenience and advantage will be promoted by the establishment of the proposed bank or trust company.
“(b) Local conditions assure reasonable promise of successful operation for the proposed bank or trust company and those banks or trust companies already established in the community.
“(c) The proposed capital structure is adequate.
“(d), The proposed officers and directors have sufficient banking or trust experience, ability and standing to assure reasonable promise of successful operation.
“(e) The name of the proposed bank or trust company is not so similar as to cause confusion with the name of an existing bank.
“(f) Provision has been made for suitable banking house quarters in the area specified in the application.”

. § 120.22, Fla.Stat., F.S.A.

. § 665.441(3), Fla.Stat., F.S.A.