344 So.2d 580 (1977)
STATE of Florida ex rel. DEPARTMENT OF GENERAL SERVICES et al., Relators,
v.
Ben C. WILLIS, Circuit Judge, Second Judicial Circuit of Florida, and Shannon R. Ginn Construction Co., et al. (Real Parties in Interest), Respondents.
No. DD-104.
District Court of Appeal of Florida, First District.
March 29, 1977.
Rehearing Denied May 2, 1977.
*583 John A. Barley, Gen. Counsel, Dept. of Gen. Services, and Daniel S. Dearing and Donna H. Stinson, Daniel S. Dearing Law Offices, Tallahassee, for relators.
Henry P. Trawick, Jr., Millican, Trawick & Griffis, P.A., Sarasota, and Anthony J. McNicholas, III, Holland & Knight, Tallahassee, for respondents Ginn and others, real parties in interest.
SMITH, Judge.
This suggestion for writ of prohibition questions the jurisdiction of Florida's circuit courts to entertain suits to enjoin allegedly illegal governmental action for which a remedy is provided by the Administrative Procedure Act, Chapter 120, Florida Statutes (Supp. 1976). Relators are the Department of General Services and the Governor and Cabinet, as head of the Department, an agency subject to the Act. Sections 20.22(1), 120.52(1). They seek to prevent the respondent circuit judge from entertaining the complaint of respondents Shannon R. Ginn Construction Co. and others, who demand an injunction restraining the Department from completing bidding and contract procedures devised to obtain "uniform interior components"  doors, ceilings, carpeting, partitions, air distribution systems and lighting fixtures  for several regional service centers to be constructed by the Department in major Florida cities.
Ginn and the other respondents in interest are licensed general contractors engaged *584 in the business of constructing public buildings. Their complaint alleges that:
"Heretofore the State has always obtained interior components for its public buildings in the course of their original construction by the bid of the general contractor selected for the project."
Relator Department has now determined to vary the usual bidding and award procedure by adopting separate specifications and inviting separate bids for uniform interior components desired for each of the widely scattered construction projects. Ginn and the others do not allege specifically that the Department's bidding and contract procedure violates statutory law, only that in several respects the procedure violates usual and acceptable standards for the award of contracts for public works,[1] will result in increased cost to the State and taxpayers and will deprive respondents and their potential subcontractors and material suppliers of opportunities to bid. Respondents assert entitlement to injunctive relief not only as general contractors directly affected by the agency action but also as citizens and taxpayers of Florida. The respondent circuit judge denied the Department's motions to dismiss the action for lack of jurisdiction and for failure to state a cause of action.
In considering the appropriateness of a writ of prohibition to prevent assumption of jurisdiction by the circuit court, we give no great significance to the complaint's failure to allege in terms that the Department's action is illegal. We are concerned here with the circuit court's power to act at all in the controversy, not with any error in the court's failure to dismiss the complaint for failure to state a cause of action. See State ex rel. Hill v. Hearn, 99 So.2d 231 (Fla. 1957); White v. State ex rel. Johnson, 160 Fla. 965, 37 So.2d 580 (1948). We therefore treat the complaint as though it alleges or is amendable to allege the Department's bidding and contract procedure violates Section 255.29, Florida Statutes (1975), requiring adoption of rules achieving awards of State work to "the lowest qualified bidder," or violates the Department's rules, or violates other law.
The Department's issuance of specifications for uniform interior components for the public buildings was agency action as that term is understood in the 1974 Administrative Procedure Act. That action affects the substantial interests of the respondent general contractors as prospective bidders for the public work under consideration. It is of no consequence to today's decision whether the Department's action thus far is a recognizable rule or an order, or incipiently a rule or order. Whatever its present state, the Department's action is or upon challenge will mature into a rule or order concerning which the Act assures respondents an opportunity to be heard according to 120.57(1) or (2) procedures and, if the result is adverse, judicial review: "[W]ith only a few exceptions clearly spelled out in the statute, all agency *585 action is covered in one way or another, either as a rule, or as an order."[2] Sections 120.57, 120.68, Florida Statutes (Supp. 1976); Lewis v. Judges of the District Court of Appeal, 322 So.2d 16, 19 (Fla. 1975); Broward Co. v. Admin. Comm'n, 321 So.2d 605 (Fla.1st DCA 1975); Bert Rogers School of Real Estate v. Florida Real Est. Comm'n, 339 So.2d 226 (Fla. 4th DCA 1976). The respondent contractors have not invoked Chapter 120 procedures to protect their substantial interests, but rather have elected to submit the controversy to the general equity jurisdiction of the circuit court. The question is whether the law affords respondents that election.
Thus we are led to consider what judicial remedies for allegedly excessive administrative action existed by statute before the 1974 Act, which of those remedies the 1974 Act intended to replace, which of those the 1975 Legislature restored, and what remedies were and are now incident to the constitutional powers of the judiciary, whether or not endorsed by statute.

Judicial Remedies Before the 1974 Act
The 1961 Administrative Procedure Act provided three methods for judicial review of administrative action, two of which were in the circuit courts: First, with an exception not here pertinent, a party affected by an administrative "rule" was authorized to seek a circuit court declaration pursuant to Chapter 86, Florida Statutes, "as to the validity, meaning or application of any rule... ." Section 120.30(1), Florida Statutes (1973).[3] Second, as an alternative to judicial review by statutes particularly applicable to specified agencies, a party affected by an administrative "order" was entitled to certiorari review in a district court of appeal of "final orders of an agency entered in any agency proceeding, or in the exercise of any judicial or quasi-judicial authority," or to appellate review in the Supreme Court as otherwise provided by statute. Section 120.31(1), Florida Statutes (1973). And third,
"When appropriate, a party may attack an adverse order by mandamus, prohibition or injunction... ." Section 120.31(4), Florida Statutes (1973).
Jurisdiction to enjoin administrative action was vested exclusively in the circuit courts. Williams v. Ferrentino, 199 So.2d 504, 513 (Fla.2d DCA 1967). But see Charbonier v. Wynne, 282 So.2d 171, 173 (Fla.2d DCA 1973) (dictum), cert. den., 292 So.2d 18 (Fla. 1974), suggesting "mandamus, prohibition or injunction proceedings may be brought to the District Court of Appeal."
Judicial interpretation of the terms "rule" and "order" as used in the 1961 Act produced rulings that "quasi-executive or quasi-legislative" administrative action was not reviewable by petition for certiorari in a district court of appeal, Section 120.31, but only by action for an injunction or other relief in a circuit court. Bay Nat'l Bank and Trust Co. v. Dickinson, 229 So.2d 302, 306 (Fla.1st DCA 1969); Dickinson v. Judges of the District Court of Appeal, 282 So.2d 168, 169 (Fla. 1973); Bloomfield v. Mayo, 119 So.2d 417 (Fla.1st DCA 1960); DeGroot v. Sheffield, 95 So.2d 912 (Fla. 1957); West Flagler Amusement Co., Inc. v. State Racing Comm'n, 122 Fla. 222, 165 So. 64 (1935). See also Levinson, supra n. 3, at 628; Note, Rulemaking and Adjudication Under the Florida Administrative Procedure Act, 27 U.Fla.L.Rev. 755, 758 n. 25 *586 (1976). Contra, Charbonier, 282 So.2d at 175.[4]

Judicial Remedies Under the 1974 Act
The 1974 Administrative Procedure Act committed to the district courts of appeal all judicial power to review agency action "[e]xcept in matters for which judicial review by the supreme court is provided by law... ." Chapter 74-310, Section 1, Laws of Florida; Section 120.68(2), Florida Statutes (Supp. 1974). The Act made no reference to circuit court review of administrative orders by proceedings for extraordinary writs, nor to circuit court declarations concerning rules. The 1974 Act thus repealed former Section 120.31(4), which authorized review of administrative orders "by mandamus, prohibition or injunction," and evidenced a purpose[5] to remove rule disputes from the circuit courts, where declaratory relief had been available under former Section 120.30. The 1974 Act provided that independent hearing officers should determine, subject to review in a district court of appeal, whether a rule invalidly exercises validly delegated legislative authority or exercises invalidly delegated legislative authority. Compare Section 120.30, Florida Statutes (1973), with Section 120.56, Florida Statutes (Supp. 1974).
By Section 120.72(1), the 1974 Act gave notice that the judicial remedies it provided were to be regarded as comprehensive and exclusive:
"[I]t is the express intent of the legislature that the provisions of this act shall replace all other provisions in the Florida Statutes, 1973, relating to rulemaking, agency orders, administrative adjudication, or judicial review... ." (emphasis added). Section 120.72(1), Florida Statutes (Supp. 1974) and (1975).

Effect of the 1975 Amendment
The ink was scarcely dry on the 1974 codification of Chapter 120, Florida Statutes (Supp. 1974) when the 1975 Legislature, by Chapter 75-191, amended Chapter 120 to add Section 120.73:
"Nothing in this chapter shall be construed to repeal any provision of the Florida Statutes which grants the right to a proceeding in the circuit court in lieu of an administrative hearing or to divest the circuit courts of jurisdiction to render declaratory judgments under the provisions of chapter 86... ."
We have no occasion in this case to determine the extent to which the "undivested" statutory jurisdiction of circuit courts to render declaratory judgments under Chapter 86 is nevertheless to be judicially restricted when coercive relief, not a declaration of some doubtful right or status, is plaintiff's real objective, or when uninvoked administrative remedies are available. E.g., Florida Motel and Rest. Comm'n v. Marseilles Hotel Co., 84 So.2d 567 (Fla. 1956); Bowden v. Seaboard Air Line R.R. Co., 47 So.2d 786 (Fla. 1950); Pest Control Comm'n v. Ace Pest Control, Inc., 214 So.2d 892 (Fla.1st DCA 1968); Florida *587 State Board of Med. Exam. v. James, 158 So.2d 574 (Fla.3d DCA 1964).[6] In the present case Ginn and the other respondents in interest forthrightly seek coercive relief against the Department and make no pretense that their complaint is justiciable under the Declaratory Judgments Act, Chapter 86.
It remains to be considered whether the 1975 legislative expression that "[n]othing in this chapter shall be construed to repeal any provision of the Florida Statutes which grants the right to a proceeding in the circuit courts in lieu of an administrative hearing" operates to preserve circuit court jurisdiction to enjoin administrative action. Chapter 75-191, Laws of Florida, Section 120.73, Florida Statutes (1975).
It must first be recognized that Chapter 75-191 did not reenact former Section 120.31(4), which provided in 1973 that "a party may attack an adverse [administrative] order by mandamus, prohibition or injunction... ." That statute was explicitly repealed by a clause of the 1974 Act which, being simply a repealer, was not published among the permanent and general laws in Chapter 120, Florida Statutes (Supp. 1974). Chapter 74-310, Section 4; Section 11.242, Florida Statutes (1973). The 1975 Act did not purport to repeal the repealer section of the 1974 session law, but only to prevent substantive provisions "in this chapter [as compiled in Florida Statutes (Supp. 1974)]" from being "construed to repeal" any Florida Statute creating circuit court jurisdiction of proceedings in lieu of administrative proceedings. Nothing in Chapter 120 need or may be "construed" for or against repeal of former Section 120.31(4), Florida Statutes (1973). The 1974 session law explicitly repealed that statute, and no construction in the judicial sense of the word is necessary or appropriate. Cf. Rojas v. State, 288 So.2d 234 (Fla. 1974), cert. den., 419 U.S. 851, 95 S.Ct. 93, 42 L.Ed.2d 82 (1974); Armstrong v. City of Tampa, 106 So.2d 407 (Fla. 1958).
Neither may it be supposed that, by enacting Chapter 75-191, the legislature preserved from repeal the baffling array of disparate statutes which, before the 1974 Act, provided for review of action by certain agencies, but not others, by various means in various courts. Those statutes provided for certiorari review of licensing or other orders of the Board of Medical Examiners or the Board of Osteopathic Medical Examiners, in the appellate district where the hearing was held, Sections 458.123, 459.141, Florida Statutes (1973); certiorari review of a license revocation order of the Board of Podiatry Examiners in the circuit court where the license was recorded, Section 461.10; review of an unspecified character of disciplinary orders of the Board of Nursing in the circuit court of Leon County, Section 464.21(6); certiorari review of license revocation orders of the *588 Board of Professional Engineers and Land Surveyors in the circuit court where the Board maintains its headquarters, Section 471.28; review of an unspecified character of orders of Department of Insurance pertaining to liquified petroleum gas, in the District Court of Appeal, First District, Section 527.17; and so on. General statutes of that sort[7] were "replaced" if not repealed[8] by the 1974 Act, which provides:
"... it is the express intent of the legislature that the provisions of this act shall replace all other provisions in the Florida Statutes, 1973, relating to rulemaking, agency orders, administrative adjudication, or judicial review ... ." Section 120.72(1), Florida Statutes (Supp. 1974), (1975) (emphasis added).
Chapter 75-191 did not purport to revive the multifarious provisions of Florida Statutes (1973) for circuit court review of certain agency orders. The 1975 Act provided only that Chapter 120 should not be construed as repealing any statute "which grants the right to a proceeding in the circuit court in lieu of an administrative hearing" (emphasis added). The replaced statutes pertained to judicial review of final administrative orders, not to circuit court jurisdiction "in lieu of an administrative hearing."
Thus it is seen that Chapter 75-191 neither reenacted repealed Section 120.31(4), Florida Statutes (1973), nor restored replaced statutes which previously gave certain courts jurisdiction to review adjudicative orders of certain agencies. But the 1975 legislation was effective to preserve the effect of statutes granting circuit courts jurisdiction of proceedings "in lieu of an administrative hearing." Such statutes abound, and they are entirely different from the statutes, replaced by the 1974 Act, which provided for judicial review of adjudicative orders. Thus, certain agencies are authorized by statute to seek circuit court injunctions against violation of statutory standards of administrative regulations pertaining to citrus, tobacco, cattle, poultry and other agricultural and business enterprises, and the injunction remedy is plainly in lieu of other administrative remedies that may be available.[9] The public records act, Chapter 119, and the public meetings act, Section 286.011, plainly authorize suits for injunction in circuit courts in lieu of administrative remedies. Chapter 75-191 made clear that those statutes should not be considered as replaced or repealed by Section 120.72(1) of the 1974 Act. Yet no statute of that type authorizes a circuit court injunction suit against the Department of General Services on account of the matters complained of by Ginn and the other respondents in this case.
We thus conclude that, except insofar as it emphasized the continuing availability of judicially-restricted Chapter 86 remedies, the 1975 amendment of Chapter 120 did not directly or indirectly authorize *589 circuit court proceedings to enjoin administrative action. It remains to be considered whether such power is vested directly by the Constitution.

Constitutional Powers of Circuit Courts
The only power affecting administrative action which is specifically reserved by the Constitution to circuit courts is jurisdiction, subject to change by general law, to entertain and decide "all cases involving legality of any tax assessment or toll." Article V, Section 20(c)(3), Constitution of Florida. See also Section 26.012(2)(e), Florida Statutes (1975). By virtue of the constitutional grant, circuit court jurisdiction of such cases is unaffected by remedies under Chapter 120. Department of Revenue v. University Square, Inc., 336 So.2d 371 (Fla.1st DCA 1976); Department of Revenue v. Crisp, 337 So.2d 404 (Fla.2d DCA 1976).
The Constitution does not itself define, but reserves for legislative definition, circuit court "power of direct review of administrative action." Article V, Section 5(b), Constitution of Florida. A similar constitutional reservation is made in favor of the district courts of appeal. Article V, Section 4(b)(2). By the Administrative Procedure Act the legislature has vested such "direct review" powers in the district courts of appeal. "Direct review" as so employed connotes judicial review of administrative action taken after agency compliance with the notice, hearing and other requirements of general law, now Chapter 120.
The Constitution does not, by so limiting the circuit court's "direct review" powers to those prescribed by general law, necessarily restrict what may be termed "collateral review" in circuit courts by virtue of their constitutional powers "to issue injunctions" and "writs of mandamus, quo warranto, certiorari prohibition ... and all writs necessary or proper to the complete exercise of their jurisdiction." Article V, Sections 5(b) and 20(c)(3), Constitution of Florida. Using historic injunction powers the Constitution commits to them as courts of equity, circuit courts had and exercised jurisdiction to enjoin administrative action long before the power to enjoin was endorsed by the 1961 Administrative Procedure Act. E.g., Crawford v. Gilchrist, 64 Fla. 41, 59 So. 963 (1912); Sparkman v. County Budget Comm'n, 103 Fla. 242, 137 So. 809 (1931); Perry v. Monarch Orange Co., 142 Fla. 176, 194 So. 320 (1940); Port Everglades Terminal Co. v. Williams, 148 Fla. 439, 4 So.2d 522 (1941).
The general power to enjoin thus continues, but it continues subject to judicial restrictions upon its use which require prior resort to and exhaustion of administrative remedies when they are available and adequate. Odham v. Foremost Dairies, Inc., 128 So.2d 586 (Fla. 1961); Northeast Airlines, Inc. v. Weiss, 113 So.2d 884 (Fla.3d DCA 1951). The companion doctrines of primary jurisdiction and exhaustion of remedies are not statutory creatures but judicial, together constituting "a doctrine of self limitation which the courts have evolved, in marking out the boundary lines between areas of administrative and judicial action." 2 F.Cooper, State Administrative Law 573 (1965). The one counsels judicial abstention when claims otherwise cognizable in the courts have been placed within the special competence of an administrative body; the other, when available administrative remedies would serve as well as judicial ones. Even though the legislative power may not presume to characterize an adequate administrative remedy as "exclusive," courts will so regard it. Whitney Nat'l Bank v. Bank of New Orleans, 379 U.S. 411, 422, 85 S.Ct. 551, 558, 13 L.Ed.2d 386, 395 (1965), quoted with approval, concerning Florida's Administrative Procedure Act, in Shevin ex rel. State v. Public Serv. Comm'n, 333 So.2d 9, 12 (Fla. 1976).
There is of course a wealth of Florida precedent requiring judicial deference to administrative remedies. E.g., Florida Welding and Erection Serv., Inc. v. American Mut. Ins. Co. of Boston, 285 So.2d 386 (Fla. 1973); Pest Control Comm'n of Fla. v. Ace Pest Control, 214 So.2d 892 (Fla.1st DCA 1968); Board of Pub. Instr. of Taylor Co. v. State ex rel. Reaves, 171 So.2d 209 *590 (Fla.1st DCA 1964); Pushkin v. Lombard, 279 So.2d 79 (Fla.3d DCA 1973); Marx v. Welch, 178 So.2d 737 (Fla.3d DCA 1965).
Forceful as those authorities are, they weighed administrative processes and remedies which were primitive in comparison to those available under the Administrative Procedure Act of 1974. Those decisions could not have calculated the adequacy, as we must, of an administrative process which subjects every agency action to immediate or potential scrutiny; which assures notice and opportunity to be heard on virtually every important question before an agency; which provides independent hearing officers as fact finders in the formulation of particularly sensitive administrative decisions; which requires written findings and conclusions on impact issues; which assures prompt administrative action; and which provides judicial review of final, even of interlocutory, orders affecting a party's interests.
The Act's impressive arsenal of varied and abundant remedies for administrative error requires judicial freshening of the doctrines of primary jurisdiction and exhaustion of remedies, and greater judicial deference to the legislative scheme. It is not that the power of circuit courts has been lessened, nor that their historic writs have been surrendered. Rather, the occasions for their intervention have lessened. As stated in the usual trenchant prose of Alto Adams and George John Miller,
"A new remedy created by statute does not infringe upon the extraordinary writs; it merely reduces the demand for them. Cutting into the scope or nature of the extraordinary writs by statute is one thing; creating an adequate remedy for a sector of the right-enforcement front formerly protected by these writs is another. This latter process merely brings up an ordinary weapon to cover an area formerly within extraordinary range only; it does not alter the extraordinary implement. The writs are always ready to take over if the range of the new statutory cannon proves too short, because their own range cannot be varied otherwise than by amendment to the Florida Constitution." Adams and Miller, "Origins and Current Florida Status of the Extraordinary Writs," 4 U.Fla.L. Rev. 421, 464-65 (1951).
We recognize, of course, that some agency errors may be so egregious or devastating that the promised administrative remedy is too little or too late. In that case equitable power of a circuit court must intervene. 3 K. Davis, Administrative Law Treatise 69 (1958).[10]
We have acknowledged that the Administrative Procedure Act does not and cannot displace circuit court jurisdiction to enjoin enforcement of facially unconstitutional agency rules. Department of Revenue v. Young American Builders, 330 So.2d 864, 865 (Fla.1st DCA 1976). See also Department of Revenue v. Crisp, 337 So.2d 404, 406 (Fla.2d DCA 1976). That jurisdiction remains unimpaired, a necessary concomitant of the judicial power vested in circuit courts by Article V, Sections 1 and 5 of the Constitution. The 1974 Act initially provided for administrative determination of constitutional attacks on a rule as "an exercise of invalidly delegated legislative authority." Section 120.56(1)(b), Florida Statutes (1975). The 1976 Legislature withdrew *591 that seeming incursion into the judicial function. Chapter 76-131, Laws of Florida, Section 120.56(1), Florida Statutes (Supp. 1976).
Does the complaint of the respondent contractors demonstrate some compelling reason why the Administrative Procedure Act does not avail them in their grievance against the Department, and why the circuit court must therefore intervene? We think it does not. No lack of general authority in the Department is suggested; nor is it shown, if that is the case, that the Act has no remedy for it. No illegal conduct by the Department is shown; nor, if that is the case, that the Act cannot remedy the illegality. No departmental ignorance of the law, the facts or the public good is shown; nor, if any of that is the case, that the Act provides no remedy for it. No claim is made the Department ignores or refuses to recognize relators' substantial interests, or refuses to afford a hearing, or otherwise refuses to recognize that relators' grievance is cognizable administratively. The respondent contractors have made no showing that remedies available under the Act are inadequate.
There is yet a question whether traditional judicial deference to administrative remedies is lessened by certain language in subsections of 120.54 and 120.56. Those sections authorize proceedings for the invalidation of agency rules, be they regularly adopted or merely proposed, which invalidly exercise delegated legislative authority. Subsections 120.54(4)(d) and.56(4) provide that "failure to proceed under [those sections] shall not constitute failure to exhaust administrative remedies." If the quoted provisions are to be construed as qualifying the exclusivity of the entire Act or its most fundamental remedies, they surprisingly tend to dissolve the judiciary's self-imposed restriction on intervention by extraordinary writ even as the Act makes such intervention less necessary and desirable.
The double entry of those provisions in the rulemaking and rule-challenging sections and their conspicuous omission elsewhere make clear that the Act intends no general cession of concurrent jurisdiction to the courts. There is no comparable language in 120.57, the core section which both provides the mechanism for rule challenges and is the Act's wider point of entry for those with more varied or general complaints concerning agency action: those against whom the agency has instituted adjudicatory proceedings, those whose impending injury is not wholly and precisely traceable to a rule invalidly exercising delegated legislative authority, those whose substantial interests are threatened by several agency causes or simply by agency action which is proceeding arbitrarily, imperiously, or obliviously.
We are accustomed to think that the principal use of hearings is to develop records for "adjudicatory" or "quasi-judicial" decisions. See, e.g., Bay Nat'l Bank and Trust Co. v. Dickinson, 229 So.2d 302 (Fla.1st DCA 1969); National Bank of Tampa v. Green, 175 So.2d 545 (Fla.1st DCA 1965). That was the limited role of administrative hearings in years past, when the "universe of administrative law was hierarchical, with the judiciary at its apex."[11] Current understanding of the administrative process, as embodied in Florida's 1974 Act, recognizes that a hearing independently serves the public interest by providing a forum to expose, inform and challenge agency policy and discretion. Section 120.57 is central to the Act's purpose to provide:
"... basic fairness which should surround all governmental activity, such *592 as the opportunity for adequate and full notice of agency activities, the right to present viewpoints and to challenge the view of others, the right to develop a record which is capable of court review, the right to locate precedent and have it applied, and the right to know the factual bases and policy reasons for agency action... ."[12]
The proper way for a substantially affected person to invoke a formal or informal 120.57 hearing is simplicity itself: he asks the agency for it. Fla. Admin. Code Rule 28-5.15 (model rule); Section 120.54(10), Florida Statutes (Supp. 1976).
An understanding of 120.57's centrality makes clear that the questioned provisions of subsections 120.54(4)(d) and .56(4)  "Failure to proceed under [those sections] shall not constitute failure to exhaust administrative remedies"  enhance remedies available under the Act rather than encourage circuit court intrusion into the administrative process. The quoted provisions are addressed not to circuit courts but to district courts of appeal, which might otherwise rebuff rule challenges by petitions to review 120.57 proceedings because petitioner did not "exhaust" the rule-challenge remedies of 120.54 and .56. See Atlantic Coast L.R. Co. v. Carter, 66 So.2d 480 (Fla. 1953). The legislative purpose is simply to avoid any appearance of requiring a substantially affected party to initiate duplicative 120.54 or .56 proceedings if his rule challenge is regularly presented with other grievances under 120.57, resulting in final agency action and a petition for judicial review.
We conclude that adequate remedies are available under the Act to the respondent contractors and that the circuit court's jurisdiction is correspondingly limited.

The Writ of Prohibition
Although the circuit courts do not completely lack jurisdiction "over the class of suit involved," that is, suits for injunction, yet no special circumstances are shown by the complaint which would bring the case "under some recognized head of equity jurisdiction warranting the relief prayed for." Prohibition is therefore appropriate here, as it was in State ex rel. Smith v. Gomez, 131 Fla. 385, 398, 179 So. 651, 657 (1938), to stop further proceedings by the chancellor. In Gomez, the respondent circuit judges were held to have exceeded their power by entertaining a bill for restraining order and other relief against the Comptroller's liquidator of an insolvent banking company. Citing authorities supporting the integrity of the administrative process, the Supreme Court prohibited the continued assumption of jurisdiction when it appeared an interlocutory appeal would not afford a plain, speedy and adequate remedy.
Upon the institution of this cause here, we determined that relators' amended suggestion for a writ of prohibition makes a prima facie case that the circuit court is "exceeding its jurisdiction in matters over which it has cognizance." See State ex rel. Turner v. Earle, 295 So.2d 609, 611 (Fla. 1974). We issued a rule to show cause why the writ should not issue. Thereby the jurisdiction of the circuit court was superseded. Fla.App.R. 4.5d. We must now take care that we not "permit a writ which proceeds upon the ground of an excess or usurpation of jurisdiction to become an instrument itself of usurpation, or to be confounded with the writ of error, which proceeds upon the ground of error in the exercise of a jurisdiction which is conceded." State ex rel. Rheinauer v. Malone, 40 Fla. 129, 132-33, 23 So. 575, 576 (1898).
The circuit court proceeding is one formerly cognizable in equity, so the court's refusal to dismiss the complaint was remediable by interlocutory appeal to this court. Fla.App.R.4.2. No such appeal was taken, and the time for it had long expired when relators' suggestion was filed. We are not at liberty to employ an extraordinary remedy to assist a litigant who has foregone an *593 ordinary one which would have served adequately. Shevin ex rel. State v. Public Serv. Comm'n, supra, 333 So.2d at 12. See also State ex rel. Boyles v. Eastmoore, 287 So.2d 333 (Fla.1st DCA 1974), cert. dism., 293 So.2d 713 (Fla. 1974).
While the ordinary remedy available to the relators was plain and speedy, it would not have been adequate. An interlocutory appeal could only have redressed the court's error in denying relators' motion to dismiss the complaint, and could not directly have prevented an excessive exercise of jurisdiction to entertain further proceedings. Indeed, absent supersedeas, the circuit court would have retained jurisdiction during the interlocutory appeal to proceed in any way not destructive of our own jurisdiction. Waltham A. Condominium Ass'n v. Village Management, Inc., 330 So.2d 227 (Fla. 4th DCA 1976); McLean v. McLean, 340 So.2d 493 (Fla.1st DCA 1976); Fla.App.R. 5.1. The office of the writ of prohibition, as the effect of our order to show cause indicates, "is to prohibit the doing of something that has not been done rather than to compel the undoing of something already done." State ex rel. Shailer v. Booher, 241 So.2d 720, 722 (Fla.4th DCA 1970).
The circuit court's lack of jurisdiction is not remedied by the allegation that Ginn and the others sue to vindicate not only their private substantial interests but also their interests as citizens and taxpayers. The substantial private interests of the contractors affected by the Department's action are adequately protected by Sections 120.54, 120.56, and 120.57, Florida Statutes (Supp. 1976), and those private interests predominate respondents' asserted interests as good citizens in the formulation of good bidding and contract procedures within the Department of General Services. See Donovan v. Schott, 58 So.2d 847, 849 (Fla. 1952).
The prayer of the suggestion is GRANTED and the writ will issue.
McCORD, Acting C.J., and MILLS, J., concur.
NOTES
[1] Omission of the requirement that the lowest qualified bidder be awarded the bid;
(b) The refusal to divulge the contents of the contract documents for the acquisition of the components;
(c) The failure to prepare the architectural and preliminary drawings and specifications for the regional service centers;
(d) The failure to obtain approval of the Division of Building Construction and Property Management Maintenance;
(e) The use of `closed' specifications so that only certain manufacturers of the components can bid;
(f) The failure to require that all component manufacturers be registered as vendors with the Division of Purchasing;
(g) Permit the selection of the components by an `evaluation team' that has no prescribed standards for determining acceptance, but allows the `evaluation team' arbitrarily to exercise discretion in accepting a bid;
(h) The specifications on which bids are to be made are `minimum' specifications and are not standard specifications so that a prospective bidder cannot know when he bids that his product will comply with the final standards followed by defendants in accepting the bid;
(i) The specifications are a disguise to permit defendants to negotiate the purchases of components rather than require competitive bids for the components."
[2] Levinson, "A Comparison of Florida Administrative Practice under the Old and the New Administrative Procedure Acts," 3 Fla.St.L. Rev. 72, 73 (1975); "The Florida Administrative Procedure Act: 1974 Revision and 1975 Amendments," 29 U. Miami L.Rev. 617, 628 (1975): "The new Act covers all final agency actions."
[3] The availability of declaratory judgments under the 1961 Act was restricted not only by the distinctive nature of declaratory relief, see text at n. 6 infra, but also by the availability of certiorari to review quasi-judicial agency action. Declaratory relief was held "not a substitute" for certiorari, the "sole remedy" for review of quasi-judicial administrative action. Carol City Util., Inc. v. Dade Co., 143 So.2d 828, 829 (Fla.3d DCA 1962), cert. disch., 152 So.2d 462 (Fla. 1963).
[4] Charbonier required the Division of Beverage of the Department of Business Regulation to conduct a judicial-type hearing before making an "executive decision" in a license revocation proceeding. 282 So.2d at 172. Although support for the court's action was found in § 561.29, Fla. Stat. (1973), a special statute pertaining to certiorari review of such decisions of the Division, the court stated that the 1961 Administrative Procedure Act "also permits review of the final orders of an agency entered in any agency proceeding without the necessity that the proceeding be judicial or quasi-judicial in nature." 282 So.2d at 175. A dissenting judge expressed the more conventional view that certiorari was unavailable to review an executive administrative decision and that it could be attacked only by injunction or other appropriate remedy in the circuit court. 282 So.2d at 176.
[5] At the Attorney General's December 1974 conference on the 1974 Act, one of those responsible for formulating the 1974 Act stated: "Although some of those making presentations today disagree, in my view, the circuit courts have lost their prior jurisdiction to render declaratory judgments on the validity of the administrative rules. The prior forms of action appear to have given way to a simple petition for review... ." Levinson, A Comparison of Florida Administrative Practice Under the Old and New Administrative Procedure Acts, 3 F.S.U.L.Rev. 72, 79 (1975).
[6] For the same reason that § 120.31(4), Fla. Stat. (1973), was not reenacted by the 1975 Legislature's expression of intention not to "repeal" any statutory provision "securing the right to a proceeding in the circuit court," text infra, the legislative caveat that "[n]othing in this chapter shall be construed ... to divest" the circuit courts' declaratory judgment jurisdiction did not revive repealed § 120.31, Fla. Stat. (1973). Thus, while § 120.31 limited declaratory relief to questions of "the validity, meaning or application of any rule," that limitation no longer exists. The effect of § 120.73, Fla. Stat. (1975), is therefore that chapter 120 shall not "be construed to repeal" any statutory authority given circuit courts by chapter 86 to render declaratory judgments affecting agency action.

While it may appear at first blush that the circuit courts' jurisdiction to grant relief was enlarged by repealing § 120.30(1), Fla. Stat. (1973), it must be noted that declaratory relief under chapter 86 was unavailable as a substitute for statutory review of "quasi-judicial orders." Pest Control Comm'n, 214 So.2d at 894. See n. 4 supra. In a sense, all agency action affecting substantial interests of parties is now "quasi-judicial," because agency compliance with § 120.57 of the 1974 Act, pertaining to decisions affecting substantial interests, satisfies the definition of quasi-judicial action consistently applied under the 1961 Act, viz., a decision "made in an adversary hearing pursuant to due and proper notice in which the rights of the parties affected are adjudicated by the agency having statutory supervision over the subject matter of the proceeding." Bay Nat'l Bank and Trust Co., supra, 229 So.2d at 306.
[7] We held in Alford v. Duval County School Board, 324 So.2d 174 (Fla.1st DCA 1975), that § 120.72, Fla. Stat. (1974), did not purport to replace special acts of the legislature providing certiorari review by circuit courts of final administrative action.
[8] Comprehensive bills to repeal such statutes by explicit reference have been introduced in succeeding Legislatures, but none has yet passed. The "replaced" provisions for judicial review of adjudicatory orders therefore remain in Florida Statutes (1975). The 1976 Legislature eased transitional procedures for judicial review of "administrative adjudicative proceeding[s]" begun under the 1961 Administrative Procedure Act before January 1, 1975, by directing reinstatement on motion before August 19, 1976, of actions seeking judicial review pursuant to any statute considered repealed or replaced by chapter 74-310. Sec. 120.72(2)(b), Fla. Stat. (Supp. 1976).
[9] E.g., §§ 573.76(6), regulating foliage plant marketing; 573.882(6), regulating flue-cured tobacco marketing; 573.909(6), regulating peanut marketing; 573.856(6), regulating soybean marketing; 574.131, regulating sales of leaf tobacco; 575.08, certification seed law; 576.171, regulating agricultural fertilizers; 580.121(3), the Florida Seed Law; 581.201, regulating the plant industry; 583.20(2), regulating classification and sale of eggs and poultry; 585.37, regulating the animal industry; 601.73, authorizing circuit court injunctions to prevent violations of the Florida Citrus Code notwithstanding other administrative remedies in 601.66 and .67; and 604.30(2), regulating agricultural products.
[10] Professor Davis there cites three "key factors" which should influence the judicial decision whether to intervene by extraordinary writ or defer to the administrative remedy: "extent of injury from pursuit of administrative remedy, degree of apparent clarity or doubt about administrative jurisdiction, and involvement of specialized administrative understanding in the question... ." See also Lone Star Cement Corp. v. FTC, 339 F.2d 505, 510 (9th Cir.1964). Davis is skeptical of the general use of extraordinary remedies, recommending instead the sort of review enacted by § 120.68, Fla. Stat. (Supp. 1976):

"To make the scope of review depend on fortuities about technical remedies is obviously unsound.
"The cure is easy. Establish a single, simple form of proceeding for all review of administrative action. Call it `petition for review.' Get rid of extraordinary remedies as a means of review. Focus attention then on the problems having significance  whether, when, and how much to review." Id. at 389.
[11] Rosenblum, "On Davis on Confining, Structuring, and Checking Administrative Discretion," 37 Law and Contemp. Prob. 49, 50, 58 (1972): "[W]e need to go beyond seeking better checks and controls. We need equally to determine ways to stimulate imaginativeness, creativity, and efficiency in the performance of administrative functions in the delivery of services." See also Stewart, "The Reformation of American Administrative Law," 88 Harv.L.Rev. 1669, 1670 (1975): "Increasingly, the function of administrative law is ... the provision of a surrogate political process to insure the fair representation of a wide range of affected interests in the process of administrative decision."
[12] Reporter's Comments on Proposed Administrative Procedure Act for the State of Florida, p. 5 (3/9/74); Lewis v. Judges of the District Court of Appeal, 322 So.2d 16, 19 (Fla. 1975).