PER CURIAM.
This case concerns the extent of DER’s chapter 403 regulatory powers over a landowner’s dredge and fill activities, associated with upland development, in the historic bed of a lake gone partially or completely dry in recent years. In that respect this case is similar to Department of Environmental Regulation v. Falls Chase Special Taxing District, 424 So.2d 787 (Fla. 1st DCA 1982), rev. den., 436 So.2d 98 (Fla. 1983), although, unlike Falls Chase, this is a conventional section 120.68 appeal from DER’s order entered after section 120.57 proceedings before a hearing officer of the Division of Administrative Hearings.
The question is whether the appellant developer is subject to DER regulatory powers and responsibilities over dredge- and-fill at a site in Lake Meadow, in Orange County, where the developer began building an earthen berm. Nearby the developer has built, as its name implies, a residential community from which surface drainage would carry pollutants deeper in the Lake Meadow basin were the run-off not otherwise disposed of or retained at some point in the drain field. The berm site is well within “Lake Meadow” as that water body is conceived. But most of the historic lake bed is now dry, or at least was dry in May 1982, when a section 120.57 hearing was conducted by a hearing officer of the Division of Administrative Hearings. The surface of the dry land at the berm site is dominated by dog fennel, a species intolerant of water.
Because the surface area at the berm site is dominated by vegetation not listed among water-tolerant species found in DER’s Rule 17-4.02, Fla.Admin.Code, DER in free-form dealings with the developer disclaimed chapter 403 regulatory responsibility over the berm site, and construction began. Chapter 120 proceedings were then initiated by the intervenors, other residents and landowners in the locale who object to the diminution of Lake Meadow as they conceive it. Despite DER's continued disclaimer of site jurisdiction, the intervenors through evidence and argument convinced DOAH’s hearing officer that DER indeed has regulatory responsibility, and the officer’s recommended order proposed to DER an interpretation of the applicable statute and rules, in the circumstances shown by the record, that would sustain DER’s regulatory responsibility in Lake Meadow. DER adopted the recommended order with inconsequential revisions.
The developer thus appeals, asserting four grounds for reversal, among them that DER’s rule definition of the term “dominance,” Rule 17-3.021(8), Fla.Admin. Code, so expands the application of Rule 17-4.02(17), listing water-tolerant species that must be “dominant” for DER to have jurisdiction, section 403.817(2), Fla.Stat. (1981), that the rule is deprived of its authority in the statute. On this section 120.-68 appeal the court may well consider such a rule-challenge and decide it, instead of remitting the parties to new rule-challenge proceedings before a DOAH hearing officer. State ex rel. Department of General Services v. Willis, 344 So.2d 580, 592 (Fla. 1st DCA 1977); Corp. v. Division of Beverage, 348 So.2d 934, 936 (Fla. 1st DCA 1977). But in this case we do not reach the rule-challenge, for assuming the rule’s validity we still find no adequate record foundation here for DER’s exposition, by the final order, of its site jurisdiction under the statute and various rules.
Encouraged by the hearing officer’s recommended order, DER found that DER has regulatory powers at the berm site because, despite the surface dominance of dog fennel, numerous subterranean tubers of water-tolerant species, such as cattails, are also found in the area. Thus, in light of Lake Meadow’s history and its future prospects, DER finds in these subterranean tubers a kind of “dominance” by water-tolerant vegetation that triggers DER’s responsibility over dredge-and-fill in “the waters of the state.” We find that DER’s order lacks the necessary evidentiary foundation for this reasoning. We therefore REVERSE DER’s order asserting regula *1157 tory powers over dredge-and-fill at this site in Lake Meadow.
REVERSED.
SHIVERS, WIGGINTON and BARFIELD *, JJ., concur.